BABCOCK, Appellant, v. MERCHANTS' EXCHANGE OF ST. LOUIS et al.

In Banc, January 25, 1901.

1. **Malicious Prosecution:** FAILURE OF EVIDENCE. A suit for damages for malicious prosecution was begun against a merchants' exchange and two of its members named Akin and Moffitt, constituting its committee to enforce a regulation prohibiting any persons but members from using the corridors or halls for brokerage business. This

resolution was read to plaintiff by said committeemen, and on his refusal to obey it, he was arrested for disturbing the peace, on an information filed by the city attorney *ex officio*, which closed with the recital, "On information of Nat. L. Moffitt." But outside of this recital in the information, which was given over the official signature of the city attorney, there is no word of evidence in the record to show that said merchants' exchange or either of the individuals named as defendants, instigated, aided, abetted or participated in the filing of the information, or the trial, which resulted in a verdict of acquittal. *Held*, that a demurrer to the evidence was properly sustained.

*Held*, by VALLIANT, J., in a dissenting opinion, that the evidence shows that defendant exchange put the machinery of the criminal law in motion against the plaintiff, and that it resulted in his being unlawfully arrested and prosecuted on a charge of which there was no evidence of his guilt, and nothing to justify a belief on defendant's part that he was guilty, and hence that, as it put the machinery in motion, it should be held liable for the consequences unless it can show that some other hand directed the prosecution after it let go, and that the circumstances so pointed to the defendant as the instigator of the prosecution as to demand of it proof to the contrary.

2. ———: MEMBERSHIP IN EXCHANGE. In such case it can not be determined whether or not defendant was entitled to membership in such merchants' exchange, or on what grounds his application for membership had been denied. And where such matters are set up as special pleas in his reply, they should be stricken out.

3. ———: ———: MALICE. Nor in such case is it proper to admit, as showing special malice against plaintiff, evidence tending to prove that other persons, including members of the exchange, engaged in irregular trading in the bucket shops or on the "curb" from which he had been excluded by the resolution and for refusing to leave which he had been arrested, and that the exchange took no steps to punish them, while it did proceed against him. If plaintiff had no legal right to be in the premises, and the exchange a legal right to eject him therefrom, it is wholly immaterial what the defendant's feelings towards him may have been in ordering him to leave, or in putting him off.

Appeal from St. Louis County Circuit Court.—*Hon. Rudolph Hirzel*, Judge.

AFFIRMED.

*Charles M. Napton* for appellant; *Chester H. Krum* of counsel.

(1) The court erred in giving the instruction for a nonsuit. It is necessary for a plaintiff to show malice and want of probable cause, and when that is done a case is made. The acquittal of Babcock in this case was *prima facie* evidence of the want of probable cause. It was sufficient to prevent a nonsuit. Casperson v. Sproule, 39 Mo. 39; Thomas v. Smith, 51 Mo. App. 605; Sharpe v. Johnson, 76 Mo. 660. Malice may be inferred from want of probable cause, and the whole question should be submitted to the jury under proper instructions. Holliday v. Sterling, 62 Mo. 321. (2) When the instruction for a nonsuit was asked on the trial below, the · court, in giving it, stated as the reason for doing so, that the plaintiff had failed to show that the Merchants' Exchange had authorized the arrest and prosecution of plaintiff. The court disregarded the fact that this action was not only against the Merchants' Exchange but also against Akin and Moffitt. If we should concede, which we do not, that there was no evidence of authorization by the exchange, yet that would be no reason for nonsuiting plaintiff as to the two individual defendants who personally caused the arrest and prosecution. The mere statement of the above fact necessitates the reversal of the judgment below, because, in any view of the case, there was enough of a case made out against Akin and Moffitt to go to the jury. But we do not concede that there was no authorization of this arrest and prosecution, as shown by the pleadings and evidence. The answer to the amended petition clearly admits that Akin and Moffitt were the members of the committee on irregular trading. (3) The allegations stricken out were responsive to allegations of new matter in the answer and set out facts which, if established, would tend strongly to

show malice. As a part of the history of this litigation, we may be permitted to state that in December, 1897, Babcock tendered the annual dues on his certificate of membership, but the same were refused, and on the first of January, 1898, the exchange declared his certificate forfeited. He thereupon sued the corporation for damages, recovered the market value of the certificate, and the judgment was paid. We cite the above decision as that of a court of competent jurisdiction holding that Babcock, as the owner of said certificate, was the owner of an interest in all the property of defendant corporation in the proportion which his certificate bore to the total number of certificates outstanding. If that decision was correct, then, at the time of this arrest, Babcock stood in the position not only of a tenant in the chamber of commerce building, but also as a part owner of the same. Such being the situation, proof of the facts set out in the reply would tend to show malice on the part of defendants. Malice may consist of an improper motive or a willful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or to do a wrong and unlawful act, knowing it to be such. It may be inferred from the facts. Alexander v. Harrison, 38 Mo. 258; Callahan v. Caffarata, 39 Mo. 136; Sharpe v. Johnston, 59 Mo. 557, 76 Mo. 660; Vansickle v. Brown, 68 Mo. 627. (4) The court should have admitted the evidence offered by plaintiff tending to show that many members of the exchange dealt in bucket shops and also owned them. The evidence shows that this entire controversy arose out of an attempt, by the exchange, to prevent its members from dealing in bucket shops. The reason of this was not because it was illegal or immoral to do so, because they allowed their own members to do it, but because every trade executed through a bucket shop took that much business away from the exchange floor. When, therefore, the exchange took steps to

punish Babcock, and nobody else, evidence that other persons were as guilty as Babcock and were not proceeded against, tended to show malice and should have been submitted to the jury with the other facts. Lalor v. Byrne, 51 Mo. App. 578. Such facts would have tended to show that there was no probable cause for this arrest. Probable cause has been defined to be "belief founded on reasonable grounds." Freymark v. McKinney Co., 55 Mo. App. 435; Staley v. Turner, 21 Mo. App. 244.

*R. F. Walker* and *F. N. Judson* for respondent.

(1) There was no evidence of want of probable cause in the prosecution for breach of the peace. The acquittal of the charge in the police court was not a discharge by an examining magistrate, but was a final judgment on all the facts, and not on a *prima facie* case. The authorities are unanimous that from such a judgment there is no inference that there is want of probable cause, and the authorities cited by appellant have no application. Boeger v. Langenberg, 97 Mo. 390; Williams v. Van Mater, 8 Mo. 339; Christian v. Hannah, 58 Mo. App. 37. It has been repeatedly held that malice can not be inferred from a mere failure of a criminal prosecution. Casperson v. Sproule, 39 Mo. 43; Beason v. Southard, 10 N. Y. 236; Gaven v. Railroad, 51 Cal. 140; Leavey v. Brannan, 39 Cal. 485; Heyne v. Blair, 62 N. Y. 19; Good v. French, 115 Mass. 201; Ames v. Snider, 69 Ill. 376. On the contrary, the conviction by the police magistrate under the vagrancy ordinance at the same time, is conclusive evidence of the existence of probable cause for the arrest and prosecution. In other words, it is conclusive evidence of probable cause to defendants for believing that plaintiff was a trespasser upon their property. Maddox v. Jackson, 4 Munf. (Va.), 462. (2) The

affirmative. proof of want of probable cause not having been made, there could be no inference of malice, and the burden of proving malice was therefore upon the plaintiff. McGarry v. Railroad, 36 Mo. App. 340; Peck v. Chouteau, 91 Mo. 138; Lalor v. Byrne, 51 Mo. App. 578. (3) There was no evidence whatever connecting the Merchants' Exchange or either of the individual defendants with the filing of the information for disturbance of the peace on July 14, whereon solely this cause of action is based. (4) There was no evidence whatever of malice on the part of defendant, the Merchants' Exchange. The alleged motives of the members in refusing to admit plaintiff as a member are clearly inadmissible. There could be no inference of malice from the lawful exercise of a right.

### In Division One.

MARSHALL, J.—This is an action for ten thousand dollars actual, and forty thousand dollars punitive damages, for malicious prosecution of the plaintiff, in the police court of the city of St. Louis upon a charge of disturbing the peace of Nat. L. Moffitt, one of the co-defendants herein. The information was filed in the police court by H. A. Clover, Jr., the city attorney, *ex officio*, on the fifteenth of July, 1897, and the prosecution was in the name of the city of St. Louis and against the plaintiff. As is usual in such proceedings, a summons was issued and served on plaintiff (the defendant therein) by reading the same to him. There was no arrest. Upon trial on such information the plaintiff was acquitted, on July 17, 1897, and thereafter on the twenty-first of October, 1897, this action was begun in the circuit court of the city of St. Louis, and afterwards, on plaintiff's application, was removed from that court by change of venue to the circuit court of St. Louis county, where the case was tried on the

twenty-seventh day of June, 1898, and resulted in the plaintiff's taking an involuntary nonsuit, with leave, and the motion to set aside being overruled, the plaintiff perfected this appeal.

The facts shown by this record are these: The Merchants' Exchange is an incorporated association; and owns a large building in St. Louis located in the block lying between Pine, Chestnut, Third and Fourth streets. There are entrances from Pine, Chestnut and Third streets to the first or ground floor of the building, through which members reach the large hall on the upper floor where the members of the exchange transact business. There are a number of rooms or offices in the building which are rented to third persons, who may or may not be members of the exchange. The plaintiff had desk room in one of those offices, which had been rented to the Gratiot Street Warehouse company. The plaintiff was not a member of the exchange. He had sometime previously purchased from a member his certificate of membership, but the exchange had refused to permit the plaintiff to become a member thereof. The certificates of membership are negotiable, and are received by the exchange in payment of initiation fees, but only when presented by a transferee who has been admitted to membership. The confluence of the three entrances aforesaid is called the "curb," in which there is a telegraph office, a lunch counter, a cigar stand, etc. Here the members of the exchange congregate after the session of the exchange proper in the large hall up-stairs and trade with each other. Persons not members of the exchange, among them the plaintiff, were in the habit of going there and trading with the members of the exchange and with any persons desiring to trade. On the twelfth of July, 1897, the board of directors of the exchange adopted a resolution prohibiting any person, not a member of the exchange, from using the corridors, halls or landing stairs of the building, except for purposes of passing to and from

the floor of the exchange and offices of the building, unless by permission of the board, and instructing the committee on irregular trading (at that time composed of the co-defendants Akin and Moffitt) to enforce the resolution. Accordingly on the thirteenth of July, when the plaintiff, as had been his habit, appeared at the "curb" and attempted to carry on his business of broker with the persons there assembled, the co-defendant Moffitt attempted to read the resolution aforesaid to the plaintiff, but he refused to hear it read in full, although he admits he knew its purport, and continued to carry on his business as usual. On the following day, July 14, plaintiff again attempted to carry on his business on the "curb," and the defendants Akin and Moffitt, as such committee, again called his attention to the resolution and asked him to desist from transacting his business there. The plaintiff kept moving away from the defendants Akin and Moffitt, and refused to stop trading or to recognize the resolution or to quit the premises. Thereupon, the defendants Akin and Moffitt, called a police officer, who arrested the plaintiff and carried him to the police station, about two blocks distant, where a charge of vagrancy was lodged against him. The plaintiff gave bond and upon being released, returned immediately to the "curb" and resumed his business there. The defendants Akin and Moffitt again called the police officer and plaintiff was again arrested and taken to the police station, but the sergeant in charge of the station ordered his release for the reason that one arrest for the same charge was sufficient. Thereafter on July 15, the city attorney filed, *ex officio*, two informations against the plaintiff, one, for disturbing the peace, and the other, for trespassing on private property, which is called the "vagrancy" ordinance in St. Louis. The plaintiff was acquitted on the first charge (disturbing the peace), which is made the basis of this action, and convicted on the vagrancy charge, but

appealed from that judgment to the court of criminal correction, in which court he was discharged, and that judgment was affirmed by this court (St. Louis v. Babcock, 156 Mo. 154).

In explanation of his refusal to leave the "curb" or to respect the resolution of the exchange, the plaintiff said he considered that he owned the property, and again that he considered it as much public property as a street. His theory of ownership rested upon his holding the certificate of membership above referred to. The plaintiff testified that prior to his arrest defendant Moffitt came to him in front of his office and read to him a "message not to do any more trading up there." His account of what took place just before he was arrested on the fourteenth of July is as follows: "I told the gentlemen to go away and let me alone, and not bother me, but Akin followed me clear around the hall, and I said, 'Akin, go way from me, I have no business with you, go away from me, let me alone, don't bother me, I don't wish any trouble with you' . . . . I was trying to get away because I didn't wish any trouble, and they called a police officer and told him to arrest me." That he was arrested and taken to the police station "amid the yells of five thousand people."

The information charged a violation of section 1036, chapter 26, article 3, Revised Ordinance, St. Louis 1893, in that the plaintiff "did then and there willfully disturb the peace of others, and particularly of Nat. L. Moffitt, by violent, tumultuous, offensive and obstreperous conduct and carriage and by loud and unusual noises, and by unseemly, profane, obscene and offensive language, calculated to provoke a breach of the peace, and by assaulting, striking and fighting others, and particularly Nat. L. Moffitt, contrary to the peace," etc.

I.

The action of the trial court in sustaining a demurrer to

the evidence at the close of the plaintiff's case is the first error assigned.

At the outset it is proper to observe that the question of whether the plaintiff was a trespasser upon the premises of the Merchants' Exchange is not involved in this case. That charge was a separate charge, lodged by the chief of police in the police court. It was the charge which was preferred against the plaintiff when he was taken under arrest, to the police station, at the instance of the defendants Akin and Moffitt. He was adjudged guilty of that charge by the police court. He appealed to the court of criminal correction where he was acquitted. The city appealed to this court and the judgment of the court of criminal correction was affirmed (St. Louis v. Babcock, 156 Mo. 154). This action is not predicated upon that prosecution. This action was begun on the twenty-first of October, 1897, while the final judgment in the trespass case was not rendered by this court until the eighth of May, 1900.

This action is based upon the prosecution for disturbing the peace, which was filed in the police court on the fifteenth of July, 1897, by the city attorney, *ex officio*, and upon which an ordinary summons, as in civil cases, was issued and served on the plaintiff (the defendant therein) on that day, and which was tried on the seventeenth of July and resulted in a judgment for the defendant therein.

As stated, this information was filed by the city attorney, *ex officio*. The case is entitled.
"Austin E. Babcock,
     "To The City of St. Louis, Dr.

"To Five Hundred Dollars, for the violation of an ordinance of said city," etc. The information closes with the recital, "On information of Nat. L. Moffitt."

But outside of this recital in the information there is not a word of evidence in this record to show that the defendant

corporation or either of the individual defendants, Akin and Moffitt, instigated, aided, abetted or participated in the filing of the information or in the trial thereof, or that they were present at the trial or even knew of it. This record is absolutely barren of any evidence connecting the defendants with that prosecution in any manner or form. The recital in the information that it was "on information of Nat. L. Moffitt," is a recital over the official signature of the city attorney, but it does not constitute any evidence of the fact recited, and as Moffitt is not shown to have authorized it or even to have known of it, he is not bound by it.

Under these conditions the plaintiff utterly failed to make out a case against any of the defendants and the court properly directed a verdict for the defendants. This conclusion renders it unnecessary to consider whether there was probable cause for or malice in the prosecution.

## II.

It is insisted however that the answer of the defendants admits that this prosecution was instituted and conducted by them.

The allegations of the answer which are relied upon to support this contention are stated in the appellant's abstract as follows:

"The amended answer sets out the purposes of the organization of the Merchants' Exchange. That it owned the Chamber of Commerce building; that prior to the arrest, the board of directors of the Merchants' Exchange had made an order that no persons not members of the exchange should be allowed to use the corridors, halls, etc., of the building except for the purpose of passing to and from the building; and the officers of the building and the committee on irregular trading were

instructed to enforce said order.    That plaintiff was not a member of the exchange and had notice of the order and yet persisted in using said corridors in his private business, which was that of a private broker, for speculators in grain.    That on the fourteenth day of July, 1897, the individual defendants herein endeavored to enforce said order of defendant, the Merchants' Exchange, and to remove plaintiff from the lower corridor after he had refused to recognize their authority or the authority of defendant, the Merchants' Exchange.    The individual defendants herein, acting for defendant, the Merchants' Exchange, did then and there cause plaintiff to be arrested and to be removed from said Chamber of Commerce building" by a police officer.    The answer charges that the plaintiff then used violent language and disturbed the peace.    The answer charges that the citation was issued against plaintiff on the following day *by the city authorities*, charging him with a breach of the peace.    The answer further denies malice, etc.

This answer can not fairly be said to support this contention.    The petition confuses the arrest and the charge of trespass made on July 14, with the information filed by the city attorney on the fifteenth charging disturbance of the peace, and erroneously states that the defendants charged the plaintiff at the police station with disturbing the peace.    The answer is quite lengthy and sets out all the facts herein stated, and distinguishes between the arrest and charge of trespass on the fourteenth and the information filed by the city attorney on the fifteenth of July, charging disturbance of the peace. It is true the answer avers, as the abstract above quoted sets out, that the plaintiff used violent language and disturbed the peace, but it also avers in the same connection as the plaintiff's abstract further shows "that the citation was issued against plaintiff on the following day *by the city authorities* charging him with a breach of the peace."    This is not an admission

that the information upon which this suit is based was prosecuted or instigated by the defendants. But on the contrary is, as far as it goes, an allegation that it was issued by the city authorities. When it is remembered that the police court adjudged the plaintiff guilty of trespass, with which the defendants charged him when he was arrested on the fourteenth of July, the materiality of the distinction between the two prosecutions becomes apparent and important.

The answer does not therefore supply the failure of the proof to connect the defendants with the prosecution for disturbing the peace, nor make them in any way liable for that prosecution and it is with that prosecution alone that we have to deal in this case.

## III.

The reply consists of first, a general denial, and, second, special pleas, to the effect that the plaintiff owns the certificate of membership and had applied for membership in the exchange, "but his application for membership had been rejected for the alleged reason that he executed orders received by him as a broker through bucket shops. It sets out that he was arrested on the 'curb' where nothing but irregular trading was done, and that all the persons participating therein were violating the rules of the exchange except plaintiff, who was not a member. It states further that at the time plaintiff was arrested he had an office in the Merchants' Exchange building; that there were ten or more members of the exchange who executed all of their orders through bucket shops, and a like number who owned and conducted bucket shops, and that out of the 3,000 members of the exchange plaintiff alone had been singled out for prosecution by defendants."

The trial court struck out the special pleas, the plaintiff preserved proper exceptions, and assigns this as error.

If the plaintiff was entitled to membership in the exchange and that right was denied him by the exchange, that question could not be determined in this action. The reply shows that his application for membership had been rejected. If this was improperly done the courts were open for the redress of the wrong by a proper action, but even this would not justify the plaintiff in going or remaining upon the premises before his right was established by a court of competent jurisdiction. The fact that other persons besides the plaintiff were also violating the rules of the exchange by trading on the "curb" or through bucket shops, is no justification whatever for the plaintiff entering upon the premises of the exchange, and remaining there after he had been ordered to leave. Even if all such other persons were guilty of a greater offense against the rules of the exchange or against public morality or positive law than the plaintiff was guilty of, it would be no defense to the plaintiff if what he was doing was unlawful, for if the law was otherwise, no offender could be punished unless he was guilty of an offense that no other person had ever been guilty of, or unless all other similar or greater offenders were also proceeded against before or at the same time he was.

There was no error in striking out the special defenses.

## IV.

Appellant insists, however, that the trial court erred in excluding evidence offered by him tending to show that other persons, including members of the exchange, engaged in irregular trading on the "curb" and in the bucket shops and that the exchange took no steps to punish them, while it did proceed against him. He argues that evidence of such conduct was admissible as tending to show express malice against him.

What has already been said in regard to the action of the

court in striking out the special pleas, applies equally to this contention. In fact the evidence so offered was substantially what had been set out in the special pleas and which had been adjudged insufficient by the court, and it therefore did not tend to support any issue made by the pleadings. Neither would it if admitted, have tended to prove express malice. If the exchange had a legal right to exclude the plaintiff from its premises, as it undoubtedly had, then malice could not be predicated upon the enforcement of such a legal right. And if the plaintiff was not entitled to go or stay upon the premises of the exchange on the ground that he was a part owner thereof or that the premises were as much public property as a street, which grounds were clearly untenable, then the exchange had a right to put him off of the premises, using only such force as was necessary to accomplish that purpose. [Morgan v. Durfee, 69 Mo. 469; State v. Reed, 55 S. W. Rep. 278-281; Norris v. Whyte, 158 Mo. l. c. 35; Phillips v. Springfield, 39 Ill. 83; Johnson v. Clem, 82 Ky. 84.] And the plaintiff having no legal right to be on the premises and the defendant having a legal right to eject the plaintiff it is wholly immaterial what the defendant's feeling towards the plaintiff may have been in ordering him to leave or in putting him off of the premises.

For all of these reasons the judgment of the circuit court is right and it is therefore affirmed.

All concur except *Valliant, J.*, who dissents.

## IN BANC.

PER CURIAM.—The foregoing opinion delivered in Division One, is hereby adopted as the opinion of the Court in Banc.

*Burgess, C. J.*, and *Sherwood, Robinson* and *Brace, JJ.*, concur; *Valliant* and *Gantt, JJ.*, dissent.

VALLIANT, J. (*dissenting*).—That the plaintiff was arrested and prosecuted upon a charge of disturbing the peace when there was not the slightest pretext for such a charge appears very clearly from the evidence. When the circumstances show an entire absence of cause, they may, in connection with the arrest and prosecution, afford a source from which the jury may draw the inference of malice. Under the evidence in this case, whatever other grievance the defendant may have had against the plaintiff, they certainly had no ground to charge him with being a vagrant or a disturber of the peace.

If he was a trespasser on their premises, his trespass consisted only in being there and soliciting trade when he had been ordered away, but he was quiet and peaceable. If he was a trespasser on defendant's premises, they had a right to eject him, and to that end they might call a police officer to put him out. But in putting him out they could lawfully use no more force or inflict upon him no more injury than was necessary to effect his expulsion from the premises. After putting him out they had no more right to carry him to the police station or imprison him than they would have had to beat him.

The testimony tended to show that the defendants did not merely ask the assistance of the police to put the plaintiff off their premises, but requested his arrest, and accompanied the policeman with the plaintiff to the station, and when he gave bail and was released, they caused him to be again arrested and forced to go to the station. The next morning when he appeared before the police court in compliance with the condition of his bail bond, he was confronted with two

charges, one of vagrancy under a peculiar city ordinance which essayed to convert a mere trespasser into a vagrant, and the other of a breach of the peace, both charges, as applied to the plaintiff's conduct, being purely fanciful. He was convicted in the police court on the vagrancy charge, but the judgment was reversed in this court, which it finally reached. On the charge of disturbing the peace he was acquitted in the police court, and this suit is for satisfaction for that prosecution.

The theory on which the trial court probably acted in giving the instruction for a nonsuit was that there was no evidence to connect the defendants with the prosecution. There was no direct evidence that the defendants preferred the charge of disturbing the peace against the plaintiff, but the circumstances so strongly indicated it that there can be but little doubt that it was done at their instance. At all events the circumstances so pointed to the defendants as to demand of them proof to the contrary. The answer of the corporation admits that the individual defendants were a committee of the corporation and acting by its direction, and avers that while they were endeavoring to enforce the order of the corporation, "the plaintiff used violent and unseemly language calculated to provoke a breach of the peace and did willfully disturb the peace by violent, tumultuous and offensive conduct . . . . . . . that he was arrested solely on account of such unlawful disturbance and for the purpose of removing him from said premises, where he was engaged in said unlawful acts . . . . . . . and defendant alleges that its action in the matter of said arrest and prosecution was solely for the purpose of protecting the property rights of the exchange, and that it was advised by counsel, to whom all the facts were submitted, that this defendant, as the owner of said premises, had the right to exclude plaintiff and all others not members of the exchange from using the Chamber of Commerce building for their pri-

vate business and that plaintiff was guilty of the said charge against him." What is that but a plea of confession and avoidance?

The evidence was to the effect that when the policeman was asked to make the arrest he asked "Who is responsible?" and the answer was "The Exchange." Then the policeman said, "I will arrest him." It was also in evidence that Mr. Judson was the attorney for the corporation and that he assisted in the prosecution of the vagrancy case in Judge Stevenson's court, and that Mr. Ashley Clover who was not the official prosecuting attorney for the city, prosecuted the plaintiff in the trials on both charges, but it does not appear who employed Mr. Clover. The evidence showed that the defendant put the machinery of the criminal law into motion against the plaintiff, and that it resulted in his being unlawfully arrested and prosecuted on a charge of which there was no evidence of his guilt and nothing to justify a belief on defendant's part that he was guilty.

The man who puts the machinery in motion should be held liable for the consequences unless he can show that some other hand directed it after he let go. In my opinion the court erred in taking the case from the jury. For these reasons I am compelled to dissent from the conclusions of the majority of the court.