# S. CARP v. QUEEN INSURANCE COMPANY et al., Appellants.

## Division Two, April 2, 1907.

1. **EVIDENCE: Files of Court: Originals: Certified Copies.** The affidavit and information and other original instruments filed in a criminal cause in the circuit court, identified by one who speaks of his own knowledge of their authenticity, such as the prosecuting attorney, are evidence. The fact that the statute (sec. 3135, R. S. 1899) makes "copies from the records, attested by the clerk, with the seal of the court annexed," evidence, is no reason why the original papers and records when fully identified should not be received as evidence. But a better method would be to call the clerk of the court and have him identify the files and records of which he is the lawful custodian.

2. ————: **Agent: Insurance Company: Adjuster.** The fact that a certain person who authorized the posting of a reward for the capture of an incendiary was an agent of one of the defendant insurance companies cannot be established by the declaration of the man himself that he was the company's agent. And the fact that such person afterwards acted as adjuster for the com-

pany in adjusting the loss which grew out of the fire will not prove that he was its agent at the prior time when the reward was posted.

3. **MALICIOUS PROSECUTION: Arson: Posting Underwriter's Reward: Agent.** Plaintiff sues seven insurance companies for the malicious prosecution of himself for arson, which he alleges was brought about by them. Evidence was offered that soon after the fire a reward for the capture of the incendiary was posted by the Board of National Underwriters. *Held*, that the connection of that board with the defendants is not shown by the fact that the adjuster of one of the companies sent the notices and furnished the money with which the poster was paid, nor was the burden on the companies to show that they had no connection with the underwriters.

4. ————: **Loss of Business.** Plaintiff alleged that he had been greatly embarrassed and defamed and caused to suffer great anxiety of mind and lost much time and incurred and unnecessarily expended large sums of money in his defense against the malicious prosecution. *Held*, that evidence that prior to his arrest he had earned fifty dollars a month, that for the six months thereafter his time was occupied in trying to defend himself, and that he spent $62 for depositions and $150 for attorneys, was clearly within the allegations, and that it cannot be said he had no business whatever.

5. ————: **Pleadings in Another Suit: New Objection.** Appellants' objection, urged in this court for the first time, that petitions, answers, stipulations, judgments and verdicts in the suits on the insurance policies were incompetent because they were proceedings had after the institution of the criminal suit out of which grew this suit for malicious prosecution, cannot be considered on appeal.

6. ————: ————: **Identification.** Besides, such pleadings were competent as original papers, if identified by some witness who could testify of his own knowledge that they were the original files in that case; and the attorney for the plaintiff in that case may be such a witness.

7. ————: ————: **Subsequent Civil Proceedings: Probable Cause.** Where the purpose of encouraging or maintaining a criminal prosecution was to avoid a civil liability, the pleadings and proceedings in the civil suits against the defendants on their insurance policies, although begun subsequently to the criminal prosecution, are competent evidence in the suit for malicious prosecution to show that purpose and a lack of probable cause.

8. ————: ————: **Motive: Interest: Policies: Verdict.** The petitions, answers and replies filed in the civil suit on the policies issued by the defendant insurance companies are compe-

tent in the suit for malicious prosecution for arson against the same companies, to show the motive they had in the prosecution. The policies are also competent as tending to show the interest which the companies had in commencing and assisting in the continuance of the prosecution of plaintiff, although they covered stocks of goods owned by plaintiff's brother for whom plaintiff was a clerk. But the verdict and judgments are not competent evidence.

9. ——: **Due Diligence to Discover Pertinent Facts.** At the trial of a suit against insurance companies for having maliciously instituted a prosecution against plaintiff for arson, plaintiff was permitted to testify that Miss Williams, in the trial of a civil suit on the policy of one of the defendant insurance companies, had testified that she lived next door to plaintiff and while the fire bell was ringing the night of the fire (about midnight) she saw plaintiff go through his front gate towards the fire. This testimony was admitted on the theory that due diligence required defendants before instituting a prosecution against plaintiff to have made inquiries of his next door neighbors, and if they had done so Miss Williams would have informed them that the testimony of the State's witnesses that plaintiff was present at the fire immediately before the bell rang and was seen standing in the shadow of the building after the bell rang, was untrue. The information in the criminal prosecution was filed in May, 1902, and the case was tried in July, and Miss Williams' testimony was given in November in the trial of the civil suit. *Held*, that this testimony was hearsay, and was not admissible in chief under the rule laid down in Stubbs v. Mullholland, 168 Mo. l. c. 76. Nor was the testimony of Miss Williams herself competent on any such theory — that is, to show that defendants were chargeable with a lack of due diligence in not having obtained it before the prosecution was begun.

10. ——: **Testimony of Witness at Criminal Trial.** It is competent for plaintiff in the suit for malicious prosecution, who was present at the trial of the criminal case and heard a witness testify, to state what was the witness's testimony at that time.

11. ——: **Agent's Effort to Get Testimony: Estopped to Deny Agency.** The testimony of a witness that an agent of the defendant insurance companies offered him money to get, and otherwise endeavored to get, information from his daughter for the prosecution of plaintiff, is competent. And the fact that such person testifies that he was not the agent of the defendants, but acted voluntarily, without compensation, does not disprove his agency. If he busied himself to get information against plaintiff, and reported it to defendant's attorney and he and the prosecuting attorney in large measure acted upon his advice and instituted the prosecution, he is estopped to deny that he was defendants' agent.

12. ———: Insurance Companies: Value of Goods Burned: Competency of Clerk.   A young woman who had for four years been a clerk in the store where the insured goods were burned, had helped to make an invoice of them shortly before the fire, and had had fifteen years experience as a clerk in like stores, is competent to testify as to the value of the stock of goods.   And where she was a witness in the criminal trial, inquiries then of her as to the value of the goods and the amount of the invoice would have been obviously relevant, and hence she would likewise be competent to testify as to the same matters in the suit for that malicious prosecution.

13. ———: Evidence of Plaintiff's Guilt.   A defendant in a case of malicious prosecution may show the guilt of the plaintiff by any evidence in his power, even though discovered after the prosecution began or after it ended, and notwithstanding plaintiff was acquitted.

14. ———: ———: Plaintiff May Disprove His Guilt.   Where the defendants in the suit for malicious prosecution tender as a defense plaintiff's guilt of the criminal charge, it is competent for the plaintiff in rebuttal to disprove the evidence offered by the defense for that purpose—in this case, by showing that the witnesses for the defendants were either mistaken or had falsely sworn to his presence at the burning building at the time testified by them by evidence that he was at his home on the night of the fire and did not start to the fire until after the fire alarms were sounded.

15. ———: Contradicting Witness: Deposition.   It is competent for plaintiff to read the deposition of a witness taken by plaintiff in another suit for the purpose of contradicting the evidence which the witness gives in behalf of defendants in the suit on trial.

16. ———: General Reputation.   In a suit for malicious prosecution, plaintiff may (where the criminal charge was arson) prove his good reputation for business integrity and honesty in the community in which he resided prior to the commencement of the criminal prosecution.   Likewise may defendant prove his bad reputation.   But the evidence on that point must not be mere hearsay of instances of supposed wrongdoing, but must go to his general reputation in some particular community.

17. REPUTATION: Based on Witness's Opinion.   The general reputation of a witness cannot be based on another witness's transactions with him; and an answer that the general reputation of a witness is bad, based on the dealings of the witness with him, should be stricken out.

18. **MALICIOUS PROSECUTION: Defendants' Connection There-with: Demurrer to Evidence.** Plaintiff was prosecuted for arson, and the case after a mistrial was voluntarily dismissed, and he sued the seven insurance companies which carried insurance on the goods burned, for having instigated the prosecution, and at the trial they asked for a peremptory instruction on the ground that the evidence did not show that they instigated or carried on the prosecution. The prosecuting attorney testified that he was not employed or requested by the defendants or their agents to file the affidavit; that the affidavit was made by one Musgrove, and that he filed the affidavit and information honestly believing plaintiff started the fire and that the evidence Musgrove gave him was sufficient to convict, and that he so stated at the time. The evidence further shows that the prosecuting attorney received his impressions and formed his conclusions of plaintiff's guilt from statements made to him by Musgrove and other witnesses secured by him; that before he filed the information, Musgrove had consulted an attorney and besought his assistance in the prosecution; that the affidavit was drawn by this attorney, and signed by Musgrove, at the attorney's request; that this attorney assisted in the prosecution from the commencement of the case until its dismissal, and that he was paid for his services by the accredited agents of defendants; that, while Musgrove denied that he was acting as the agent of the defendants in seeking evidence and urging the prosecution against plaintiff, they accepted those services and acted upon his advice and employed the attorney to prosecute plaintiff on the charge of arson; that the only parties interested in the prosecution were the defendants, who were seeking to avoid their policies on the goods burned; that a few days after the fire and before Musgrove became so active in his search for incriminating testimony against plaintiff, one Welch, an adjuster for all the defendants except one, was in the city of the fire, sent for plaintiff and his brother who owned the stock of goods, and assumed to represent defendants as adjuster and examined them as to the amount of the loss, and in the presence of a witness in the office of the local agent expressed the opinion that plaintiff had burned the store, and that he would send the United States marshal to arrest him, and that plaintiff ought to be in the penitentiary. *Held,* first, that defendants are estopped from denying that Musgrove was their agent; *second,* that the evidence was ample to show the connection of defendants with the instigation and carrying forward of the prosecution.

19. ———: ———: ———: **Advice of Counsel: Agent's Disclosure of All Evidence.** In this case it was for the jury to determine whether Musgrove, the agent of defendants, who swore to the

affidavit and gave to the prosecuting attorney the information upon which the prosecution was based, disclosed all the facts within his knowledge, or which were easily ascertainable by him, touching plaintiff's connection with the fire, to the prosecuting attorney and defendants' counsel; and hence the court was not authorized to take the case from the jury under the rule that, where defendants truthfully disclose all the facts within their knowledge to competent counsel and are ad~ised that there is probable cause for the prosecution, they are not liable.

20. ———: **Probable Cause.** Probable cause is a mixed question of law and fact. Where the facts are undisputed, it is for the court to declare their legal effect; where they are disputed, it is for the jury to determine the question under proper instructions. And where there is testimony showing that no probable cause for the prosecution existed, or where there is evidence which impeaches defendants' testimony and tends to show it to be unreliable, the question is for the jury. The court should not assume the absolute truth of the testimony of defendants' witnesses.

21. ———: ———: **Instruction: False Testimony.** The court instructed the jury that "notwithstanding you may believe from the evidence that there was sufficient evidence produced at the trial of the criminal case against plaintiff as defined to you in other instructions, yet, if you further believe from the evidence that any material part of the evidence introduced against plaintiff in said criminal case was false, or was known to be false by defendants or either of them or their agents or servants, and that said false testimony was procured or connived at by defendants or either of them or their agents, then the jury would be warranted against such defendant or defendants, in finding that there was no probable cause for said prosecution, and that the same was malicious." *Held*, not to assume that there was false testimony given against plaintiff, nor to hold defendants liable for an unauthorized act of their agents, but was well enough.

22. ———: **Defendants' Connection Therewith: Instruction.** Defendants' connection with the prosecution of the criminal case does not have to be proven by direct and positive evidence, but may be established by facts and circumstances from which it may be reasonably inferred.

23. ———: **Instruction: Acts of Agent: Advising Prosecution: Continuing, etc.** An instruction which directs the jury that if "defendants or either of them by their servants or agents wilfully, maliciously and without probable cause, did aid, advise or procure an information to be filed . . . or did wilfully,

maliciously and without probable cause, aid, abet and advise the continuance of said prosecution after the filing of said information by their servants or agents," etc., does not hold the defendants liable for the acts of their servants regardless of their authority from defendants, and the use of the words "advise the continuance of said prosecution" was not improper when taken in connection with the words "aid, abet and advise," nor is the instruction otherwise erroneous.

24. ———: ——— **Probable Cause: Malice: Advice of Counsel: Damages.** Instruction on probable cause, on the advice of counsel, on malice and on the measure of damages, actual and punitive, in a suit for malicious prosecution, are set out in the opinion, and *held*, to be correct.

25. ———: **At Instance of Prosecuting Attorney: Instruction.** Where the evidence demonstrates that the prosecution against plaintiff was not begun by the prosecuting attorney of his own motion, but was instigated by defendants' agents and attorney, an instruction which tells the jury that their verdict must be for defendants. if the prosecution was begun and maintained by the prosecuting attorney of his own motion, and without any request or procurement on the part of defendants, should not be given. Instructions should be based on the state of the case which the evidence justifies. (Distinguishing White v. Shradski, 36 Mo. App. 635, where said instruction upon a different state of facts was proper.)

26. ———: **Beginning Prosecution.** Defendants may be liable in a civil suit for malicious prosecution notwithstanding they did not begin the prosecution; they are liable if they maintained its continuance or aided and abetted it until its end, with malice and without probable cause.

27. ———: **Disagreement of Jury in Criminal Trial: Probable Cause.** The disagreement of the jury in the trial of the criminal case does not constitute reasonable grounds for a belief that defendant therein was guilty, and is not evidence of probable cause in the civil suit for malicious prosecution, and does not constitute a circumstance from which the jury may infer that such prosecution was with probable cause.

28. ———: **What Constitues Beginning of Prosecution?** An instruction which undertakes to tell the jury that the information and not the affidavit filed by the agent of defendants was the beginning of the prosecution against plaintiff, is out of place and should not be given where the prosecution was induced by the affidavit and statements of defendants through the affiant and the advice of defendants' attorney and maintained by defendants until the prosecution ceased.

29. ———: Excessive Verdict. The amount of damages in a civil suit for malicious prosecution is largely a question for the jury, and their verdict should not be held by the appellate court to be excessive unless the court can say it was the result of prejudice, passion or malice.

30. ———: ———: Elements. Mental pain and anxiety caused by the disgrace accompanying the prosecution, the humiliation and danger from a prosecution for a grave criminal offense, the jeopardy in which plaintiff was placed, are elements of damages; and besides, disgrace is a relative term, varying in its effects upon different men, and dependent upon many conditions—all of which are matters for the jury.

31. ———: ———: Self-Serving Evidence. Testimony of a witness that after plaintiff's arrest he went around hanging his head and acting as if he was in deep trouble and not in his right mind, is not proper to prove damages from anguish and the disgrace suffered. It opens too wide the door of self-serving testimony.

Appeal from Christian Circuit Court.—*Hon. Asbury Burkhead,* Judge.

REVERSED AND REMANDED.

*Edward J. White, Martin L. Clardy* and *Barger & Hicks* for appellants.

(1) Incompetent and illegal evidence was permitted to be introduced by plaintiff over defendants' objection and exception. (a) All the testimony of W. O. Oldham, relative to the existence and objects of the National Board of Underwriters, and his information of its business and methods, shown by him to be wholly derived from what he had been told by others, was purely hearsay and incompetent. Greenl. Ev., sec. 98; Chouteau v. Searcy, 8 Mo. 733; Atkisson v. Castle Garden, 28 Mo. 124. (b) The unverified and uncertified files and records of the circuit court of Lawrence county, were incompetent, because not properly authenticated by the certificate of the clerk of the county court from whence they came. R. S. 1899, sec. 3135; Greenl. Ev. (14 Ed.), sec. 502; Crow, Hargadine & Co. v. Stev-

ens, 44 Mo. App. 140; Gentry v. Field, 143 Mo. 409; Hickman v. Griffin, 6 Mo. 37; Moyer· v. Lyon, 38 Mo. App. 635. (c) The act of the court in admitting the declarations of the alleged adjusters of defendants for the purpose of establishing their agency, and the acts and declarations of such illegally established agents, was manifest error. Craighead v. Wells, 21 Mo. 404; Anderson v. Vollmer, 83 Mo. 403; Waverly Co. v. Cooperage Co., 112 Mo. 383; Stove Co. v. Furniture Co., 93 Mo. App. 237; Oil Co. v. Zinc Co., 98 Mo. App. 324; Diel v. Railroad, 37 Mo. App. 454. (d) The posting of the reward, by the National Board of Underwriters, not shown to be connected in any way with a single one of the defendants, was illegal evidence. Diel v. Railroad, 37 Mo. App. 458; Smith v. Ins. Co., 107 Cal. 432; Atkisson v. Castle Garden, 28 Mo. 124. (e) The evidence of the injury from the prosecution to the business of plaintiff was incompetent, not only because all the evidence showed that plaintiff never had any business in Aurora, but also because no injury to his business—if he had had any—was alleged as a basis for such special damages. 13 Ency. Pl. and Pr., 453; Fine v. Navarre, 104 Mich. 93. (f) The petitions, answers, judgments and verdicts in the suits on the policies, even if they had been properly authenticated, and verified, were incompetent and illegal evidence in this case, and only tended to the further prejudice of defendants' rights. The suits on the policies were not tried until six months after the criminal suit, and the issues were wholly different. Kennedy v. Holladay, 25 Mo. App. 515. (g) The statements of the assets of· the several defendants, not shown to have been issued by them, or to have been authorized by them, and the evidence set forth therein, was incompetent and prejudicial. Evidence of the wealth of defendant in such cases is held to be admissible, but it must be confined to proper evidence of such facts and limited by proper inquiry to

legal evidence. Newell, Mal. Pros., p. 604; Spear v. Hiles, 67 Wis. 350. (2) (a) The court erred in overruling defendants' demurrer offered at the close of plaintiff's evidence and again at the close of the whole case. White v. Shradski, 36 Mo. App. 635; Babcock v. Mer. Exch., 159 Mo. 381; Newell, Mal. Pros., sec. 7, p. 108; Warren v. Flood, 72 Mo. App. 199; Smith v. Ins. Co., 107 Cal. 432; Engelke v. Chouteau, 98 Mo. 629; Boden v. Railroad, 84 S. W. 181; Leigh v. Webb, 3 Esp. 164; Hahn v. Schmidt, 64 Cal. 284; McNeeley v. Driscoll, 2 Blackf. 259; Newman v. Davis, 58 Iowa 447; Armstrong v. Railroad, 46 La. Ann. 1448; Bartlett v. Brown, 6 R. I. 37; Shea v. Lumber Co., 92 Minn. 348; Black v. Buckingham, 174 Mass. 102; Bell v. Railroad, 58 N. J. L. 227; Strehloe v. Pettitt, 96 Wis. 22. (b) The evidence connecting plaintiff with the burning of the store was sufficient, as a matter of law, to have justified the court in holding that the prosecution was based upon probable cause, and for this reason the demurrer should have been given. Meysenberg v. Engelke, 18 Mo. App. 346; Taaffe v. Kyne, 9 Mo. App. 15; Pandjiris v. Hartman, 196 Mo. 539; Johnson v. Miller, 63 Iowa 529. (c) The demurrer should also have been sustained because of the total lack of evidence showing any malice upon the part of defendants against plaintiff. Vansickle v. Brown, 68 Mo. 627; Jordan v. Railroad, 105 Mo. App. 446. (3) The court erred in giving instructions 1, 2, 3, 4, 5, 6 and 7, and each and every one thereof, on the part of plaintiff. Fox v. Smith, 55 Atl. 689; Herbener v. Crossman, 55 Atl. 223; Ruth v. Railroad, 98 Mo. App. 1; 13 Ency. Pl. and Pr., 435; Vansickle v. Brown, 68 Mo. 627; Jordan v. Railroad, 105 Mo. App. 446; Boden v. Railroad, 84 S. W. 181; White v. Shradski, 36 Mo. App. 635; Warren v. Flood, 72 Mo. App. 199; Babcock v. Merchants Exchange, 159 Mo. 381; Slater v. Kimbro, 91 Ga. 217. (4) The court erred in refusing instructions 1, 2, 3 and 4, and each thereof,

asked by defendants. White v. Shradski, 36 Mo. App. 640; Johnson v. Miller, 63 Iowa 529; McCaskey v. Garrett, 91 Mo. App. 354. (5) The damages found by the jury were grossly excessive and the result of passion and prejudice. Ruth v. Railroad, 98 Mo. App. 19; Farrell v. Railroad, 103 Mo. App. 454; Chitty v. Railroad, 166 Mo. 435.'

*H. H. Bloss, McNatt & McNatt* and *G. A. Watson* for respondent.

(1) (a) Where one offers the same sort of evidence, he waives any objection he might have had to its offer by the other side, and the rule would certainly apply with greater force where he offers the evidence first, of which he complains. Ruth v. Railroad, 98 Mo. App. 1; Dice v. Hamilton, 178 Mo. 81; Strother v. De-Witt, 98 Mo. App. 293. (b) The statute was passed for public convenience, to enlarge the means of evidencing public instruments. Our courts have held that the original as well as a copy are admissible. Ohmeyer v. Ins. Co., 91 Mo. App. 189; Van Riper and Rogers v. Morten, 61 Mo. App. 444; Reynolds v. Ins. Co., 88 Mo. App. 679. The case of Hickman v. Griffin, 6 Mo. 37, cited by appellant to support this contention is opposed to it. The court held that the affidavit was not identified and was not a certified copy and should have been excluded. If it had been identified it would have been admissible. If this objection relates to the original bills of exceptions read from, then we answer that appellants themselves used the bills of exception and besides the stipulation in respondent's additional abstract which appellants failed to copy in their abstract, authorized the reading of them. (c) The next alleged error assigned by appellants relates to the evidence admitted showing declarations of adjuster of defendants for the purpose, as appellants allege, to prove

the agency of the adjusters. If the record showed that there was no other evidence to show the agency of the adjuster for defendants, then we concede the assignment would be well taken, but this record is full of other evidence showing the relation between defendants and their adjusters. Chase v. Rusk, 90 Mo. App. 25; Bonner v. Lisenby, 86 Mo. App. 666; Parsons v. Ins. Co., 132 Mo. 583. The adjuster is the *alter ego* of the insurance company and his admissions made at the time of examining the loss are the admissions of the company. Sisk v. Fire Ins. Co., 95 Mo. App. 695; Branigan v. Ins. Co., 102 Mo. App. 70. (d) Where the evidence shows that the purpose of encouraging or maintaining criminal proceedings is the enforcement of the avoidance of a civil liability, the motive for such conduct is shown to be malicious. Stubbs v. Mulholland, 168 Mo. 47; Meysenberg v. Engelke, 18 Mo. App. 346; Stanley v. Turner, 21 Mo. App. 251; Eagleton v. Kabrick, 66 Mo. App. 231; Clark v. Thompson, 160 Mo. 461. (e) The evidence of Miss Williams was properly admissible for several reasons. It developed the existence of testimony prior to the beginning of this prosecution that was accessible to defendants and their agents if they had wanted to honestly determine the probable guilt of Mr. Carp. Stubbs v. Mulholland, 168 Mo. 47; Thomas v. Smith, 51 Mo. App. 605; Eagleton v. Kabrick, 66 Mo. App. 231; Proctor Coal Co. v. Moses (Ky.), 40 S. W. 681; Pedan v. Mail, 118 Ind. 560; 19 Am. and Eng. Ency. Law (2 Ed.), 698; Ruth v. Railroad, 98 Mo. App. 19. (2) Before a defendant in a malicious prosecution case can shield himself behind the advice of counsel, he must establish that he disclosed all the material facts, truthfully and honestly, which he knew or by the exercise of reasonable diligence could have ascertained, and that he relied upon the advice of counsel, in good faith, believing the plaintiff to be guilty of the crime. Stubbs v. Mulholland, 168 Mo. 47; Sharpe v. Johnston,

76 Mo. 669; McIntyre v. Leverny, 148 Mass. 546. Where a prosecution is conducted by reason of a false affidavit or carried on by introducing false testimony, this of itself is sufficient proof of want of probable cause. Sharpe v. Johnston, 76 Mo. 672; Firer v. Lowery, 59 Mo. App. 96; Boogher v. Hough, 99 Mo. 183. And even if a person is convicted, if it was done by false testimony or unfair means, there is no probable cause. Womack v. Circle, 32 Gratt. 324; Adams v. Bickwell, 126 Ind. 210. Even if there was no evidence of ill-will, the fact that defendants were trying to evade the payment of a civil obligation, and that this would bring about the proper results should they secure a conviction, is sufficient evidence of malice. Meysenberg v. Engelke, 18 Mo. App. 346; Eagleton v. Kabrick, 66 Mo. App. 231. (3) If the testimony was found to be false by the jury (which it certainly was) and defendants aided in procuring it, then they should be made to suffer in damages for their wrongful attempt to use the criminal courts to defeat a contract liability. Sharpe v. Johnston, 76 Mo. 672; Firer v. Lowery, 59 Mo. App. 96; Womack v. Circle, 32 Gratt. 324. (4) While it may be true that the second refused instructions is a literal copy of the one approved in the case of White v. Shradiski, 36 Mo. App. 640, still, if the instruction would not conform to the issues or the facts in this case, there could be no error in refusing it. (5) The amount of the damages in malicious prosecutions, where there is proof of all the elements of damage, as in this case, is solely for the determination of the jury. Chapman v. Dodd, 10 Minn. 350; Hiatt v. Kincaid, 28 Neb. 721; Marks v. Hastings, 101 Ala. 165; 19 Am. and Eng. Ency. Law (2 Ed.), 702. Cases where verdicts were sustained on appeals in amounts ranging as large or larger than the one in this case as based on facts more in keeping with the case at bar: Railroad v. Gehr, 66 Ill. App. 173; Rawson v. Leggett, 90 N. Y. Supp. 5,

97 App. Div. 416; Railroad v. James, 10 S. W. 744; Railroad v. Talbot, 131 Ind. 231; Cuthbert v. Galloway, 35 Fed. 466; Clark v. American Dock, etc., Co., 35 Fed. 478.

GANTT, J.—This is an appeal from the judgment of the circuit court of Christian county, wherein S. Carp recovered judgment against the Queen Insurance Company of America and others for $12,500 as damage for malicious prosecution.

The action was commenced on January 17, 1903, in Lawrence county. A change of venue was granted the defendants to Greene county and the circuit court of Greene county granted the plaintiff a change of venue to Christian county. The cause was tried in the last-named county, at the August term of the court, and resulted in a verdict for the plaintiff and judgment accordingly.

The petition in substance alleges that the seven insurance companies, defendants herein, are each and every one foreign corporations engaged in the business of fire insurance in this State, and are liable to be sued herein; that the defendants on or before the — day of May, 1902, in the county of Lawrence and State of Missouri, falsely and maliciously and without any reasonable or probable cause, procured and caused to be made an affidavit charging the plaintiff with the crime of arson in setting fire to and burning a certain stock of goods, wares and merchandise, in said affidavit described, and belonging to one H. Carp, situated in Lawrence county, Missouri, and on or about the same day caused the same to be filed in the circuit court of Lawrence county, Missouri, and by reason of said affidavit, a State's warrant was issued, charging the plaintiff with the said crime of arson. The plaintiff states that afterwards, to-wit, on the — day of May, 1902, he was by the consent and procurement of defendants arrested

under said warrant and was compelled to give a good and sufficient bond for his appearance at the next regular term of said Lawrence Circuit Court. Plaintiff further states that after his arrest, to-wit, on the — day of November, 1902, the plaintiff appeared before the said circuit court of Lawrence county, the day on which plaintiff was bound by law to appear to answer said charge of arson, and at said last above date, the State of Missouri refused longer to prosecute plaintiff for said charge and the plaintiff was by the said circuit court fully discharged from further appearing or answering to said charge of arson, and the prosecution of plaintiff for said crime of arson is now at an end.

Plaintiff further states that during all of said times referred to and each and every act done in the prosecution of the plaintiff for said crime, the defendants acted with malice towards plaintiff, and actively participated in the prosecution of plaintiff for said false charge from its beginning until plaintiff was fully discharged, and that said prosecution was conducted without any reasonable or probable cause, but for the purpose of vexing and harassing the plaintiff for their financial benefit. Plaintiff says that by reason of said arrest and malicious prosecution, plaintiff has been injured in his reputation, greatly embarrassed and defamed, and has been caused to suffer great anxiety of mind and has lost much time, and has incurred and necessarily expended large sums of money in his defense in said prosecution, and has otherwise been greatly injured to his actual damage $10,000, and plaintiff says that by reason of defendants' malicious action and their unlawful and vexatious purpose in prosecuting and harassing plaintiff and in view of the wealth and standing of both plaintiff and defendants, the defendants should be punished for their unlawful action, and plaintiff asks that he may recover in addition to his actual damages $15,000 as punitive or exemplary

damages, for both of which he asks judgment and his costs.

The defendants filed a joint answer, which consisted of a special denial of each and every material allegation in the plaintiff's petition, and then for a further defense, they allege that the said defendants and each of them upon information and belief, say that the said affidavit and information filed against the said plaintiff and referred to in the petition, was filed by the informant therein named under the advice of the prosecuting attorney of Lawrence county, Missouri, and after the affiant, one John Musgrove, had given to said prosecuting attorney a full and fair statement of all the facts known to said Musgrove, and that said prosecuting attorney on May 31, 1902, on his knowledge, information and belief, and upon his oath of office, made and filed in said court his affidavit informing the circuit court of Lawrence county, State of Missouri, that on the 29th day of January, 1902, one S. Carp did willfully, unlawfully and maliciously set fire to and burn a certain house located in the city of Aurora, Missouri, belonging to one J. R. Woodfill, Jr., of the value of five thousand dollars, and at the same time and place did willfully, maliciously and feloniously set fire to and burn a certain stock of goods therein belonging to one H. Carp, and of the value of four thousand dollars, a copy which said affidavit of said prosecuting attorney is hereto attached and made a part hereof, and that on said affidavit and information of said prosecuting attorney alone, the alleged said warrant was issued, under which plaintiff was arrested and prosecuted as alleged in his petition, and that there was reasonable and probable cause for the filing of said affidavit and information, but the defendants and each thereof denied that they or either of them had anything whatever to do with the filing of either said affidavit or information and aver that said affidavit and information were filed

and the said warrant issued and plaintiff arrested without the procurement or knowledge of these defendants or any of them, and that. neither they nor any of them had any thing whatever to do with the alleged prosecution of the plaintiff. The said answer concluded with a general denial of each and every ellegation in the petition.

The plaintiff filed a reply denying all the new matters pleaded by the defendants.

The evidence tends to show the following facts:

The plaintiff, S. Carp, prior to and on January 29, 1902, resided in the city of Aurora, Lawrence county, Missouri, and had general charge and supervision of a stock of goods in said city belonging to his brother, H. Carp, who resided in St. Louis. The building in which said stock of goods was kept, belonged to J. H. Woodfill, Jr., and was known as Number 117 Olive street in said city. The stock of goods was insured against damage by fire in the sum of eight thousand dollars, by the insurance companies, who are defendants in this cause. Harry Carp, a tailor in St. Louis, had begun this business in Aurora in 1897, and placed his brother in charge of said stock with full power to carry on the business, purchase and sell the goods, sign all papers, draw checks, etc., for which he paid him fifty dollars per month salary. The evidence tends to show that sometime in the year 1900, Harry Carp, the owner of said stock of goods, bought another stock known as "The Fair" from Mrs. Dr. Harding. He purchased this stock at sixty-five cents on the invoice price, or for four thousand and eight hundred dollars. For a while these two stores were kept in separate places, both being managed by the plaintiff S. Carp, and each store was separately insured for three thousand dollars. In September, 1901, the two stores were united under one roof, and the several insurance policies transferred so as to cover the united stock. Harry Carp, the owner,

from time to time visted Aurora, and while there in
January, 1902, and while his clerks were invoicing the
stock, took out another policy of insurance to the
amount of two thousand dollars on the stock and fix-
tures, for the reason alleged by plaintiff that the in-
voice showed $12,000 worth of goods in stock and only
$6,000 of insurance, and because there had been sev-
eral attempts to burn a large hotel across the street
from the store. On the night of January 29, the store
building in which this stock of goods was kept was
burned, and the stock was nearly a complete loss, only
about three hundred dollars worth of goods being
saved. On the 28th of May, 1902, John Musgrove, a
resident of Aurora, made and signed an affidavit charg-
ing the plaintiff, S. Carp, with having maliciously and
feloniously set fire to and burned said store house be-
longing to J. R. Woodfill, Jr., and the goods, wares and
merchandise therein situated belonging to H. Carp, with
the intent then and there to defraud, damage and prej-
udice the Queen Fire Insurance Company and the oth-
er insurance companies named as defendants in this
cause, and alleging that said goods, wares and mer-
chandise were then insured to the said H. Carp against
loss and damage by fire in the sum of eight thousand
dollars by the said insurance companies, the defend-
ants herein. It further appears from the testi-
mony of Isaac V. McPherson, Esq., the prose-
cuting attorney of Lawrence county in 1902,
that Musgrove, soon after the fire, gave him
the names of witnesses whom he had found, and
detailed to him, the prosecuting attorney, the facts
which the said witnesses had told Musgrove they would
swear to, tending to prove that the plaintiff S. Carp
was guilty of arson in setting fire to and burning said
building and stock of goods, and Mr. Conner also gave
the prosecuting attorney the name of other witnesses.
Mr. McPherson testified that he talked to those wit-

nesses and afterwards, on the 28th of May, Musgrove made the affidavit above referred to. That affidavit he testified was drawn in the law office of E. J. White, Esq., and was written on a typewriter by Mr. White at the dictation of Mr. McPherson and was sworn to by Musgrove afterwards on the 31st day of May. Mr. McPherson prepared the information wherein he charged "upon his knowledge, information and belief that the plaintiff willfully, unlawfully, maliciously and feloniously set fire to and burned the said house and stock of goods." This information was verified by Mr. McPherson as true according to his best knowledge, information and belief, and was filed in the office of the circuit court of said county on the 31st of May, 1902. At the July term, 1902, the plaintiff was put upon his trial in the circuit court of Lawrence county on the charge of arson, and there was a mistrial as the jury disagreed.

John Cockran, a witness for the defendants, testified that the jury took a number of ballots and that they were eight to four for conviction, or nine to three on the first ballot; on the last ballot, they stood either seven to five or eight to four for conviction; the highest number of votes the defendant received was six or seven, and he thinks that on one ballot there was only two for acquittal. Frank Mitchell, another of said jurors, testified, on behalf of the plaintiff, that he was the clerk of the jury and on the first ballot there were four for conviction and eight for acquittal; that his recollection was that on one ballot they stood ten for acquittal and two for conviction; this was the highest number the defendant ever received. He thinks they stood six to six when they were discharged.

At the November term, 1902, the civil case of H. Carp against one of the insurance companies on his policy of insurance on said stock, was tried in the circuit court of Lawrence county,

and on the trial of that case Miss Blanche Williams testified on behalf of the plaintiff, Carp, and gave testimony tending to prove that he left his home on the night of the fire, after the fire bells had been rung, and tended to contradict the evidence given in the criminal case tending to show that the plaintiff was down at the store room just before and at the time that the fire was discovered. At this same November term, the prosecution for arson was set down for trial and the State was not ready for trial, and it appears that the counsel for the defendant therein, the plaintiff herein, was insisting that the case be tried or dismissed. Mr. McPherson testified that on the day this case was set for trial, which was the day after the civil trial on the policy, the judge of the circuit court spoke to him and asked him if he had been present and heard Miss Williams' testimony in the civil case, and he told him that he had not, and the judge said that he had heard her testimony, and in his judgment it was very strong and would likely secure an acquittal of Mr. Carp. He knew how many witnesses there were, and it would be piling up a big bill of costs against the State, and he would have his stenographer read to the prosecuting attorney the testimony of Miss Williams upon that trial on the policy, that in his judgment it would be futile to try the case again. Thereupon the prosecuting attorney had the stenographer read the testimony of the witness to him, and after hearing it read, he nolleed the case. He testified, ''I was asking that the case be continued, and Mr. Carr McNatt was insisting that the case be disposed of in some way at that time, either tried or entirely wiped out, and that is the way we fixed it.'' Mr. Bloss, another of plaintiff's counsel in the arson case, also asked that the case either be tried or nolleed entirely at that time.

While upon the stand, the prosecuting attorney, Mr. McPherson, testified as follows: Q. "Now were

you employed by the insurance companies to file that affidavit?" Ans. "I was not." Q. "Were you requested by any of the insurance companies or their witnesses or representatives of any kind?" Ans. "I was not." Q. "Did you receive any letters requesting you to do so?" Ans. "I never, or never had any communication." Q. "Did you file that affidavit and consider it an act of your own will, honestly believing that he started that fire?" Ans. "I did from the evidence given to me. I had consulted and had had statements given to me by persons in whose honesty I relied, of all the witnesses that I had reason to believe knew anything of this fire." Q. "When you filed that affidavit informing the court on your information and behalf and on your oath of office that he started this fire, did you not believe then that the evidence that you had in your possession was sufficient to convict him of the crime?" Ans. "Yes, sir." Q. "State whether or not you heard Mr. Musgrove at the time he made his affidavit, which has been introduced in evidence, that what was stated would be sufficient if proven, and you believed the testimony was sufficient for a conviction, and whether you advised him that the information that he gave you was sufficient to warrant the prosecution and probable conviction?" Ans. "I advised Mr. Musgrove, at the time he made this complaint, that I believed the testimony that he was giving me and what I had from other persons, was sufficient on Mr. Carp to show his guilt, and that he could be convicted, and would be on the trial."

The plaintiff offered in evidence a copy of an offer of reward of two hundred and fifty dollars by the National Board of Underwriters for the detection, conviction and punishment of the party or parties who should be found guilty of arson in setting fire to the premises containing the stock of dry goods owned by H. Carp, on the 29th of January, 1902. To the intro-

duction of this offer of reward, the objection was two-fold, first, that it was not the best evidence, and, second, because there was no evidence tending to connect the defendants or either of them with the said offer. The objection was overruled and the defendants excepted. The said reward was offered by the National Board of Underwriters, signed by H. K. Miller, secretary of the executive committee, and purported to have been offered by order of the executive committee, the two hundred and fifty dollar reward to be paid upon the conviction of the person found guilty of arson in burning the premises containing the stock of goods owned by H. Carp on the 29th of January, 1902. In regard to the first objection, it appeared from the testimony of Mr. Minor that he was a resident of Aurora through the year 1902 and was engaged in bill-posting as a part of his business, and that he posted the rewards above mentioned; that they were given to him by John T. Ragsdale, who paid him for posting the same; that he posted them about thirty days after the fire, and thinks there were about fifty of the offers of reward posted. He testified that the bills that were posted had all been destroyed by the weather and for that reason none of the originals could be produced. He could not testify to the contents of the bills and did not know how they were signed. They were posted by his bill-posters.

The testimony offered by the plaintiff to connect the defendants with the Natonal Board of Underwriters, and its or their offer of reward, consisted, first, of the testimony of O. W. Oldham, who as a witness for the plaintiff, stated that he lived in Springfield and had resided there for about twenty years, and was engaged in the insurance business and as bureau inspector of the insurance agents and as an adjuster; he was asked from his experience in the insurance business, whether he was acquainted with the National Board of

Underwriters of New York City, and what relation they sustained to the insurance companies, the defendants in this case. Preliminary to answering this question, the court permitted counsel for the defendants to examine the witness. He testified that he did not know whether the underwriters association was a corporation or not, nor whether it was a stock company or not. Had never been in their office and did not know who the officers of the company were. He had been in the habit of getting a letter from Mr. Miller once a year, but he did not know whether he was an officer or not. All that he knew about Miller's relationship to any insurance company was what he had heard other insurance agents in Missouri say. He did not know anything about the relationship of the underwriters association and its officers to any insurance company. Thereupon the defendant objected to Oldham testifying and answering the question of the plaintiff. This objection was overruled and the defendants duly excepted. The substance of his testimony was that about once a year he got a letter from Mr. Miller asking witness to furnish statistics in regard to his field of insurance; he never observed any of the transactions of the underwriters association except that once in a while they offered a reward for an incendiary. The underwriters did not do any insurance business to his knowledge. He did not know that the underwriters association was a combination of insurance companies; he had no knowledge or recollection of their offering a reward for any losses of any particular insurance company. In this connection the plaintiff also offered John Ragsdale, who testified that he lived at Aurora and at the time of the fire, and at the time he testified, he was agent for the Hartford Insurance Company, The Commercial Union, Fireman's Fund and the Hanover Fire Insurance Company of New York; that he did not offer any reward, but he gave some printed

slips offering a reward to Lewis Minor, and handed the money to pay for the same to another gentleman in Aurora, who gave it to Mr. Minor to pay for posting the same; that he got these notices of reward either out of the mail or by express from Mr. Tebbitts of Kansas City to pay for posting the same; Mr. Tebbitts was a special agent for the Hartford Insurance Company. On cross-examination, he stated that he had probably seen Mr. Tebbitts a half dozen times. The home office of the Hartford Insurance Company had never sent him a statement that Tebbitts was their agent. The only way he knew he was their agent was from his own statement that he was. At this point, the defendants moved the court to strike out the answer of the witness that Tebbitts was the special agent of the Hartford, on the ground that it was incompetent hearsay and not the best evidence; the agency could not be established by the agent's declaration, which motion was overruled, and defendants excepted. He testified further that he did not have one of the rewards in his possession. No reward was sent by the Hanover Insurance Company, or the Commercial Union or the Hartford or from either of the home offices or general agencies of either of the defendant companies. Tebbitts did not come into the office and hand him any rewards to put up; the witness never knew of him putting up such rewards, or requesting any one else to do so. On redirect examination the witness was asked if Mr. Tebbits had not been acting as agent for the insurance companies in their losses that occurred in Aurora, and he answered, "I do not believe the Hartford had any other loss except one, and he wrote him about that." That loss was adjusted by Mr. Welch, and Tebbitts wrote him concerning it.

Plaintiff also offered James Wilson as a witness, who testified that he lived in Aurora at and prior to the time of the fire, and that on or about the first of Febru-

ary, 1902, he was in the office of Mr. Ragsdale one Saturday and heard a conversation between a Mr. Welch and Mr. Ragsdale. At that time he did not know Mr. Welch, but Mr. Ragsdale has since told him that the man who was in his office talking to him at that time was Welch. He was asked to state what Mr. Welch said. To this question the defendants objected, because it was a conversation not material to the issues in this case, and in the next place there was no evidence tending to show that Mr. Welch was agent for the companies who are now sought to be bound by the testimony of the agent of one defendant only; that before Mr. Welch's declarations could affect them, it should first be shown that he was their agent and had authority to make declarations called for by the question. The objection was overruled and the defendants excepted. The witness thereupon proceeded to state that Mr. Welch came to Mr. Ragsdale's office and went through the latter's insurance books the first thing. Ragsdale was representing several companies in Aurora. Welch went out and stayed a little while and then came in again and said he had seen Mr. Carp. He did not stay but a few minutes, but got some copies of the books, he went out again, and was not gone long until he came back; witness was still there. Welch said, "Carp has burned his store, G— d— him," and "as soon as he, Welch, got back to Kansas City, he would send the United States marshal down to get him. He ought to be in the penitentiary." The defendants moved to strike out the answer to the last question because it was simply a declaration of what Welch intended doing himself. The motion was overruled and the defendants excepted. Witness understood Welch to say that he was representing all the companies that had any loss except one. The defendants objected to the last question and moved to strike out the last answer for the reason that the fact was attempted to be established by

the uncorroborated statement of the agent alone, was incompetent as affecting the rights of the defendants, and for the reasons mentioned in the previous motion, and for the further reason that this testimony which was admitted under stipulation from a deposition taken in another case was not really covered by the stipulation for the reason Judge Neville in the civil case, after its introduction, struck it out. The motion to strike out was overruled and the defendants excepted.

Plaintiff next offered in evidence the answer of the defendant companies in former cases on the insurance policies, submitting to arbitration of insurance difference between defendant companies and H. Carp, for the purpose of connecting the two adjusters. To this offer the defendants objected that the arbitration papers signed in May did not tend to prove that Welch had authority to make this declaration in February; that he was an adjuster there for the purpose of finding out, inquiring and getting information of the value or damages; that the fact that Welch was authorized in the matter to sign the agreement to submit the amount to appraisers did not tend to prove that he had authority from the defendants to arrest this man, or that he was qualified with authority in the mater to prosecute under the terms of the policy. By the court: "It might have a tendency to prove that he was agent for the companies, I will let it go in for what it is worth." Defendants further objected that the papers offered had not been shown to be the answer of the defendants. The only way to verify the record is to bring in a certified copy under the seal of the clerk. The court overruled the objections, and the defendants excepted. And thereupon the plaintiff read the answers of the defendants. In the third paragraph of said answer, the defendants pleaded a stipulation in the policy as follows: "In the event of disagreement as to the amount of loss,

the same shall as above provided be ascertained by two competent and disinterested appraisers, the insured and this company, each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, stating separately sound value and damage, and failing to agree shall submit their difference to the umpire and the award in writing of any two shall determine the amount of such loss.'' The plaintiff then introduced in evidence an agreement for submission to appraisers by and between H. Carp and Hamburg Bremen Fire Insurance Company of Germany and such other insurance companies who may sign this agreement to Sol Jonas of Aurora, Missouri, and M. A. Potts of Kansas City, Missouri; together with a third person who shall first be chosen by them to act as an umpire on the differences only between the appraisers herein named to estimate and appraise at its true cash value immediately before the fire and the direct or immediate loss and damage caused by fire which occurred on the 29th of January, 1902, property partially or totally destroyed and owned by H. Carp, etc., signed by the Hartford Insurance Company by C. E. Tebbitts, the American Union Association Company, Firemen's Fund Insurance Company, Queen Insurance Company, Hamburg Bremen Fire Insurance Company, by Milton Welch, Adjuster, and by H. Carp, dated May 14, 1902, and a blank agreement for umpire between the said appraisers, which was never executed.

The plaintiff then introduced Solomon Jonas as a witness, who testified that he did not know Milton Welch or C. E. Tebbitts; he knew S. Carp before the fire and had known him about two years. He was then asked if he had noticed any difference in the business prospects of S. Carp after the charge of arson and the trial of S. Carp thereon. To this evidence the defend-

ants objected until it was shown that plaintiff had some business. The objection was overruled. Counsel for defendants then said: "Is it not a fact that these policies were issued to H. Carp and not to Sam Carp, and the business conducted by Sam Carp, he is conducting in the name of his wife, and so Sam Carp never did do business in his own name there before, or since the fire? Is not that true, Mr. Bloss?" Mr. Bloss, "No, it is not true, the business was conducted in the name of H. Carp, we are willing to concede that. This man certainly has some occupation, and if he was injured this witness should be permitted to tell it." The objection was overruled and defendants excepted. The witness then proceeded to state that he noticed quite a difference in plaintiff's business prosperity before and after the trial; a great many people began to think the man was guilty from representations made on the streets after he was arrested, but a great many people thought well of him until he was arrested. Certainly it reflected on his business. Witness was then asked if he noticed any evidence of mental worry as a result of the trial, to which defendants object as not a proper element of damage, but the court admitted the evidence and the witness stated that the plaintiff went around hanging his head down as if in great trouble. On cross-examination he stated that the plaintiff was now conducting a business at Aurora, but he did not know in whose name it was being conducted. He did not know that plaintiff's residence property was in his wife's name, he did not know that he had failed in business in East St. Louis.

John McNatt was sworn for the plaintiff; he testified he was a member of the bar and had been connected with the criminal and civil cases in this Carp litigation as an attorney from the beginning until now. He identified paper offered in evidence as the answer of the defendants filed in the circuit court of Lawrence

county. Counsel objected to the identification of the pleadings because not certified, but the court overruled the objection and admitted the pleadings as originals.

There was much testimony on the part of the plaintiff in regard to the fire and as to the presence of the plaintiff herein at that fire and as to the indebtedness of H. Carp to the Bank of Aurora. This evidence tended to show that the stock of goods of H. Carp in the building that was burned approximated the value of ten to twelve thousand dollars.

The plaintiff offered himself as a witness and testified, among other things, that he knew Milton Welch, that he was an adjuster for the fire insurance companies which had policies on the stock of H. Carp, and that Mr. Welch came to Aurora shortly after the fire and sent over to the store to see Harry Carp; the plaintiff went with Harry Carp to the hotel to see Mr. Welch, and Mr. Welch said: ''I wanted to know of your fire,'' he was an adjuster, and Harry gave him a statement of the stock, invoice, etc. He inquired how much the sales were and how much we owed. He afterwards met Mr. Welch at Monett and asked him what he was going to do about the loss, and he said that ''H. Carp's rights would have to come into the court.'' The losses were not settled, a suit was brought on all the policies. Plaintiff testified that he made an invoice prior to the fire and was assisted by Miss Sue and Pearl Harper; that the invoice amounted to eleven thousand dollars. He testified that the additional two thousand dollars was taken because of a fire in a hotel, which was only twenty-two feet distant from their store. This additional insurance was taken about two weeks after the hotel fire. He testified to the mental worry and anxiety he suffered from the criminal prosecution. Prior to the fire his earning capacity was fifty dollars per month and for the succeeding six months he did not do anything to earn any money, but his time was taken up

defending himself. His expenses in collecting evidence was sixty-two dollars for depositions, and one hundred and fifty dollars attorney fees. He was cross-examined as to his actions and whereabouts on the night of the fire. He testified that he failed in business in 1893 in St. Louis, and assigned his goods for the benefit of his creditors and they got paid in full. He was asked if he was at Bald Knob, Arkansas, and he testified that he traveled through there, but never did any business there. He went by the name of S. Carp there. He testified that the business he was now in at Aurora belonged to himself and his wife, but was in her name. He testified that Mr. McPherson, the prosecuting attorney, and Mr. Edward White prosecuted him in the criminal trial. He testified that Mr. White was helping the insurance companies. Mr. White appeared for the State in the taking of depositions in the criminal case. Mr. White also testified in the criminal case at the instance of the defendants.

Plaintiff also offered in evidence the testimony of Mr. Edward J. White taken in the circuit court of Lawrence county, Missouri, at the July term, 1902, in the case of the State v. Carp, to which the defendants objected because the witness was present, and it could not be used as impeaching testimony because Mr. White had not been put upon the stand. The court overruled the objection, and the plaintiff read in evidence a portion of the evidence of Mr. White in the deposition, which was in effect that the witness identified an affidavit of John Musgrove to be in the witness's handwriting; the affidavit was made on witness's typewriter by witness himself, and interlineations in pen and ink were by himself, and that he asked Musgrove to make the affidavit.

The plaintiff then called Mr. White as a witness who testified in substance as follows: That he was employed by Mr. Barger to assist in the defense of several

insurance companies in the several cases of H. Carp against them. "A short time after the fire, the present sheriff of Lawrence county, Mr. Conner, who was a political and personal friend of mine, came to my office and told me of the evidence against Mr. Carp. He stated that he had burned the store, and Musgrove came to my office and told me there was going to be a reward offered and wanted me to help out in the suit and wanted to employ me on his behalf, to cross-examine the witness and enter the case, conditionally, that is, for a part of the reward they offered; they gave him such evidence as to lead him to believe he would be convicted, that is the first part I took in the prosecution of Mr. Carp." Witness received a telegram asking him to appear while depositions were being taken at Mr. Bloss's office. "I was rather backward about entering the case for this reason: you were taking depositions in the case of State v. Carp and Conner came and told me you were taking these depositions, and I told him I did not want to enter an appearance in that case; that I had no authority to appear for the State, and he said, 'I will get you authority, this underwriters association have offered a reward and I will get you some authority.' He said he was going to wire the secretary and he went off and brought me a message after that, but who it was from, I do not remember. I went up and cross-examined the witnesses at your office, Mr. Bloss, but it is my recollection it was in the State case. I got a telegram from Mr. Hicks of the firm of Barger and Hicks." Deposition was shown to the witness, and thereupon he stated that notice appeared to have been in the case of H. Carp against the American Insurance Company. "I see from that I was mistaken. I was paid for my services in the criminal case. After I had tried the insurance case in November, the question of my service came up and Mr. Welch talked to me and said that I

ought to be paid, but he had no authority to employ any one, but he said, you have assisted here and if Mr. Conner does not pay you, I will. I was paid one hundred dollars by Mr. Barger after the trial in the several cases and Mr. Welch indicated or promised to pay me fifty dollars as a personal fee, and I received fifty dollars for my assistance in the other case from Mr. Barger. My first employment by any of the insurance companies was in November, 1902; the plaintiff had instituted a suit in June that was afterwards dismissed. My name was not signed to this answer, and I was not employed prior to November by the insurance companies.

Plaintiff also offered F. L. Harper as a witness who testified to Musgrove offering to pay him for any information he could get from his daughter, who formerly clerked for Carp. He did not understand that Musgrove wanted to corrupt him, but simply wanted him to assist in getting up the evidence against Carp. Musgrove was looking up the evidence in the criminal case and was willing to pay him for his services.

Plaintiff also offered in evidence the various insurance policies, to which the defendants objected, but the objection was overruled and the defendants excepted and the policies were read to the jury.

Plaintiff also offered all the pleadings in the case to which the policies were attached, to which the defendants objected, but their objections were overruled and defendants excepted. Plaintiff also offered the evidence as to the capitalization of the several insurance companies, the defendants in this case, and then rested. Thereupon the defendants offered a demurrer to the evidence which was by the court overruled. The defendants then formally made a motion to strike out various items of evidence, particularly the statements of Mr. Welch, the evidence of Ragsdale as to the receiving and posting of the rewards, the affidavit and warrant, and information in the criminal case, and the

evidence of the plaintiff Carp in relation to the alleged reward, which motion was overruled and the defendants excepted.

The defendants then offered evidence of John Horn, John Musgrove, Lewis McKeet, Dave Smith, J. H. Zumbrunn and Thomas Loy, tending to show plaintiff's guilty connection with the fire which destroyed the stock of goods, and tending to impeach and contradict the testimony offered on behalf of the plaintiff as to the occurrences at the fire and the whereabouts of plaintiff on that night. Defendants also offered Peter McGannon as a witness, who testified that he had been a merchant in Aurora since 1891, and in a general way was familiar with H. Carp's stock of goods and the old Harding stock, and that he would consider six thousand dollars a fair invoice for that stock at the time of the fire. Also the evidence of Mr. John Horn and Eliza O. Quinn tending to show that the plaintiff Carp was around the building in which the stock of goods was situated that night, and at the back door after eleven o'clock that night just before the fire was discovered in the store room, and tending to disprove the evidence of the plaintiff and Miss Blanche Williams, that plaintiff was at home after the fire broke out and only went to the burning building after the fire alarm was given. Defendants also offered evidence of T. H. Loy to the effect that the general reputation of James Wilson, a witness for the plaintiff, for truth and veracity was not good, which testimony on motion of the plaintiff was stricken out and taken from the jury over the objection and exceptions of the defendants. And also the evidence of Tate Baufman, who testified that he was a carpenter, and repaired the Carp store room after the fire; that plaintiff had the key and refused to allow him in until six weeks after the fire; that he found a five gallon coal oil can in there down under the burned dry goods and shoes. "Carp would not allow us in until

the insurance companies had seen the goods; there was also about a half wheel barrow full of burned kindling wood lying around there; the oil can had not exploded but was empty; there was some holes burned in the store room about five feet away from the stove, but no holes in the floor near the stove.'' With this the defendants rested their case.

In rebuttal the plaintiff offered in evidence the deposition of John Musgrove taken in the case of H. Carp against the Commercial Union Insurance Company, to which the defendants objected because it had not been taken in the State case nor in the case in which the plaintiff was a party, and because it was not competent to contradict the witness thereby because the whole deposition was not called to his attention while he was on the stand, which objections were overruled and the deposition read in evidence. Plaintiffs also offered in evidence the testimony of John Musgrove in the case of H. Carp against The Hamburg Bremen Fire Insurance Company taken at the trial at Springfield, to which the defendants objected, but the objection was overruled and the evidence of the witness read to the jury. Plaintiff also offered the evidence of A. G. Keim, who testified that he was a real estate and insurance agent and that prior to the fire on January 29, 1902, plaintiff's general reputation in the community in Aurora for truth and veracity and business integrity and honesty was good; that since the fire it is not good; that he carried insurance on the building which plaintiff occupied and his company ordered him to cancel the policy and would not carry it so long as he kept the building. Defendants moved to strike out these answers, but the objection was overruled and defendants excepted. Plaintiff also offered the testimony of Miss Blanche Williams as contained in the bill of exceptions of H. Carp against The Queen Insurance Company, to

which the defendants objected because if offered for the purpose of showing want of probable cause it was not rebuttal testimony, but evidence in chief, and for the additional reason that Miss Williams was not a witness in the criminal cause at all and her evidence was not known either by the State or the defendant until months after that trial and could throw no light upon the proceedings had in the criminal case. The objections were overruled and Miss Williams' testimony was read. Plaintiff then offered the evidence of J. O. Davis tending to show that Mr. Carp, the plaintiff, did not arrive at the fire until after the witness reached the fire and did not object to opening the door of the store room, but tried to open it. Plaintiff also offered the evidence of M. T. Davis, cashier of the Bank of Aurora, and who had been the general manager of the Aurora Mercantile Company for four or five years, who testified that he was well acquainted with the stock of goods of H. Carp, was in his store every few days; that he was in there about a week before the fire. He held a note that H. Carp owed Dr. Harding, for collection. The note was past due about three months, and witness went to the store to collect it. Witness looked over the stock of goods for the purpose of satisfying himself about the value of it. The store was full of goods, some of the goods were of good values and some were cheap. In the opinion of the witness, the stock was worth about ten thousand dollars. When he called he held three notes of one hundred and fifty dollars past due. The face of the notes unpaid with interest was about two thousand dollars; that in addition to that, he owed the bank of witness about four hundred dollars outside of that. Plaintiff said he owed about eleven hundred dollars outside of this indebtedness amounting to about thirty-five hundred dollars. Witness had little interest in seeing the plaintiff recover; thought

he would get his four hundred either way the case went. So far as the other notes were concerned, he had ample security outside in the shape of a mortgage on real estate. As to the three hundred and fifty dollars on the past due notes, the plaintiff came to the bank and gave witness a check on the St. Louis bank for the amount before the fire. This check was paid in the regular course of business. Plaintiff also offered in evidence the testimony of Miss Susie Harper, who had clerked for plaintiff for almost five years prior to the fire, and helped take the stock once a year. She and her sister, Miss Pearl Harper, assisted in taking the stock just before the fire. She had had fifteen years' experience in clerking and during that time had handled stocks of goods. In her opinion the stock of goods was worth from ten to twelve thousand dollars.

This was the substance of all the testimony. Other facts and the instructions of the court will be considered in the examination of the assignments of error.

I. It is first insisted that the court erred in admitting illegal and incompetent evidence offered by the plaintiff, and it will be necessary to discuss the several items of evidence *seriatim.*

First, it is insisted that the testimony of W. O. Oldham relative to the existence and objects of the National Board of Underwriters was incompetent. As to this evidence it is sufficient to say that the witness knew nothing and testified to nothing which could in the most remote degree have been injurious to the defendants and could in no possible manner have been prejudicial.

Second, it is next urged that the court erred in admitting unverified and uncertified files and records of the circuit court of Lawrence county, because not properly authenticated. What specific records are referred to in this assignment is a matter of conjecture. If the objection relates to the affidavit of John Musgrove

charging the plaintiff with burning the store building
in Aurora and sworn to on May 28, 1902, before Rags-
dale, a notary public, this affidavit was handed to Mr.
McPherson, the prosecuting attorney, when he was tes-
tifying, and he was asked to examine it and identify
it, and he stated that he had seen it and that it was
the affidavit of Mr. Musgrove, and as to the informa-
tion he also testified that it was the original informa-
tion which he filed in the Lawrence Circuit Court. No
objection whatever was made to the certified copy of
the order of dismissal made by the circuit court of
Lawrence county. The objection is that these orig-
inal files were not certified to by the circuit clerk of
Lawrence county as required under section 3135, Re-
vised Statutes 1899, which provides that "copies from
the records of proceedings of any court of record of
this State, attested by the clerk thereof, with the seal
of the court annexed, if there be a seal, or if there be
no seal, with the private seal of the clerk, shall be re-
ceived as evidence of the acts or proceedings of such
court of record in any court in this State." This
objection goes to the length of insisting that
the original files, although identified by one who
speaks of his own knowledge as to their authentic-
ity, is not evidence. Section 3135 was enacted for the
public convenience to provide for the means of prov-
ing the contents of records by certified copies thereof.
It was not the purpose of this statute to exclude orig-
inal instruments, which have been properly identified
as such. In State v. Chambers, 70 Mo. 626, 627, a
justice's docket was admitted in evidence upon the
proof of its character by the constable who was the
officer of the justice's court, and this court held that
while the evidence of the justice as to the fact of the
book being the docket would perhaps have been more
satisfactory than that of the constable, no reason could
be perceived why the fact could not be established by

the constable if he had actual knowledge of it. And so here under the evidence in this case, we can see no reason why the affidavit of Musgrove, which was drawn in the presence of the prosecuting attorney and filed by him in the circuit court of Lawrence county and his own information filed in the criminal case charging the plaintiff with arson in said court, could not be identified by him. To hold otherwise would be to hold that an original instrument fully identified is not evidence, but that a copy of it would be. We think the objection is untenable. The case of Hickam v. Griffin, 6 Mo. 37, is simply authority for the proposition that an affidavit not identified and of which there is no certified copy, was not admissible. Nothing said in that case is in conflict with the conclusion we have reached in this. In State v. Rodman, 173 Mo. l. c. 693, the proposition was advanced that it was not competent to prove the contents of an indictment by the original itself where a change of venue had been granted to a different county from that in which the indictment had been found, because it was a file of the court from which the change of venue had been taken, and it was held that the objection was utterly untenable. In that case, the language of Mr. Justice SCHOL-FIELD, in Stevison v. Earnest, 80 Ill. 513, was approved, wherein he said: "It is said, in books treating on evidence, that 'the record itself is produced only when the cause is in the same court, whose record it is; or, when it is the subject of proceedings in a higher court.' But this has reference to the ability of the court to compel the production of the record, and not to the question of its sufficiency as an instrument of evidence, if actually produced. The copy is receivable in evidence, not because it is better evidence than the original, but because it is presumed the original cannot be obtained. . . . It does not, logically, follow, however, that the records

being obtained can not be used as instruments of evidence, for the mere fact of obtaining them does not change that which is written in them. Whether they are where they ought to be, or elsewhere, they are records of the court. . . What end of justice can be subserved when the records of one court are actually present in another court, by refusing to receive them in evidence and requiring them to be returned to their proper custody, there to be copied, and then receiving the copy in evidence? The facts proved must be precisely the same, whether the originals or copies are read in evidence, and it must, therefore, be totally unimportant to the party against whom the evidence is offered, which it shall be." [Day v. Moore, 79 Mass. l. c. 524; Britton v. State ex rel., 54 Ind. l. c. 541.]

When these documents were first offered there was no proof of their genuineness and the objection should have been sustained, but when they were afterwards fully identified by the prosecuting attorney, they were properly admitted and the error committed in the first instance was entirely cured. If the assignment is intended to apply to the original bill of exceptions, that was covered by the stipulation of the parties filed in this cause.

II. Error is next predicated on the action of the court in permitting the witness Ragsdale to testify that Tebbitts was a special agent for the Hartford Insurance Company. Ragsdale testified that the only way he knew that Tebbitts was such agent was because he came in to the witness's office and said he was. This testimony as to Tebbitts at this stage of the trial was directed to the action of Tebbitts in sending Ragsdale some printed notices of a reward offered by the National Underwriters Association for the detection and conviction of the incendiary who set fire to the building in which the Carp stock of goods was located and to

show that Tebbitts had sent the witness money from Kansas City to post the rewards, and that that money was paid to Minor, who had the rewards posted. The law is well settled in this State that an agency cannot be proved by the mere acts and declarations of one assuming to act in that capacity. [Anderson v. Volmer, 83 Mo. 403; Bank v. Leyser, 116 Mo. 68; Bank v. Morris, 125 Mo. 350; Waverly T. & I. Company v. Cooperage Company, 112 Mo. 383.] This is conceded to be the law by the learned counsel for the plaintiff, but he insists that as it was shown that Tebbitts subsequently acted as the adjuster of one of the defendants, his acts and declarations made while acting as such, were admissible, but the acts and declarations of Tebbitts now under consideration all occurred prior to his acting as adjuster for his company, and while the company is bound by his acts in its behalf as adjuster, there was no sufficient proof that prior to the 14th of May, 1902, Tebbitts was acting as such adjuster, and consequently it must be held that this evidence was erroneously admitted.

In this connection the defendants also complain of the evidence of the posting of the reward by the National Board of Underwriters, because that body was not shown to be connected in any way with any of the defendants. We have examined the record very carefully on this point and the only ground upon which it is asserted that such a connection was shown with either of the defendants is that Tebbitts, who afterwards acted as adjuster for one of the companies, the Hartford, sent the notices of the reward and furnished the money with which Minor was paid for posting them, but we do not think that this fact of itself establishes any connection between the Hartford and the National Board of Underwriters. It is certain that neither Tebbitts nor Ragsdale claimed to be acting for the defendants or either of them. Ostensibly they represented

the underwriters alone.  It is not an uncommon thing, especially in our large cities, that an insurance agent or adjuster represents more than one insurance company and certainly his act in the performance of duties relating to one of such companies would not bind the others.  As to the companies other than the Hartford there is not the slightest pretense that there was any competent evidence connecting them or either of them with the National Board of Underwriters, nor in our opinion were the defendants called upon to affirmatively establish that they had not any connection with the Board of Underwriters because the burden was on the plaintiff to show that fact in order to bind defendants by any act of the underwriters association. We think that the offer of reward by the underwriters and the payment therefor by Tebbitts was incompetent and erroneous.

It is next urged that the court erred in permitting evidence of the injury to plaintiff's business because defendants insist the record conclusively shows that he was not engaged in any business.  In his petition the plaintiff alleges that he has been greatly embarrassed and defamed and caused to suffer great anxiety of mind and has lost much time and incurred and necessarily expended large sums of money in his defense in said prosecution.  When on the stand he was asked, Did you lose any time in defending yourself against this prosecution?  And he answered that he had from the day he was arrested until November 17th, or about six months.  He was asked what his earnings were and he answered five, six and seven dollars per day, that prior to the fire he earned fifty dollars per month when he worked for H. Carp.  After the prosecution was started he did hardly anything, his time was occupied trying to defend himself; that his expenses in collecting evidence in his behalf were sixty-two dollars for depositions and one hundred and fifty dollars for at-

torney fees. We think this evidence was clearly within
the allegations of the pleadings. In State to use v.
McHale, 16 Mo. App. 478, in an action on an attach-
ment bond, it was held that the allegation that the
plaintiff "was required to pay out large sums of money
in defense of the suit, and suffered a loss of time in at-
tending thereto, and was injured in his business," was
sufficient to warrant a recovery for attorney fees and
extra expense in the suit. That decision was approved
in State to use v. Fargo, 151 Mo. 1. c. 290. It will be
observed in this case the attorney fees and time lost to
which the plaintiff testified, were confined to the time
he was arrested until his discharge in November and
for the attorney fees incurred in the defense of the
criminal prosecution alone. It cannot be said under
this evidence that the plaintiff had no business what-
ever. It was for the jury to estimate and to take into
account his loss of such business as he had.

III. Again, the admission in evidence of the peti-
tions, answers, judgments and verdicts in the suits on
the policies is urged as error because they were pro-
ceedings had after the institution of the criminal suit.
On the part of the plaintiff it is insisted that they were
competent to show the liability of the defendants and
the efforts they were making to escape therefrom for
the purpose of showing the motive the defendants had
in encouraging and assisting in the criminal proceed-
ings. When these papers were offered in evidence the
objection was that they were not authenticated by a
certificate of the clerk of the court from which the rec-
ord came, and that the attorney could not authenticate
the records by his statements. The court ruled that the
attorney could not identify the papers, but that they
identified themselves. The clerk of the court was not
present, and Mr. McNatt, the witness who was one of
the counsel in the case, was not permitted to identify
the papers as the original rolls and files of the circuit

court of Lawrence county in the several cases of H.
Carp against the defendants, the different insurance
companies, on the policies issued by them upon the
stock of goods. The court overruled the objection and
admitted all the pleadings in the said cases and the
defendants excepted. The objection now urged in the
brief was not made at all at that time and of course
is not before us for decision at this time. As we have
already said, these original papers were competent as
primary evidence, but in order to make them so in this
case, it was essential that they should have been iden-
tified by some witness who could testify of his own
knowledge that they were the original files in the said
cases in the Lawrence Circuit Court, and as Mr. Mc-
Natt was of counsel in all of said cases and was one of
the attorneys of the plaintiff in each of them, it was
perfectly competent for him to have testified whether
they were the original files or not, but the court at first
excluded his testimony and refused to permit him to
identify any of the papers but later on allowed him to
identify the petition and answers of the defendants,
which after all contained the matter which the plaintiff
desired to place before the jury, to-wit, the fact that the
defendants were each of them contesting their liabil-
ity on the policies and containing also the stipulation
of Welch and Tebbitts as adjusters for the defend-
ants for an arbitration of the losses, which stipulation
was competent as tending to show that, at that time at
least, Tebbitts and Welch were the agents of and au-
thorized to act for the defendants in regard to their
liability on these policies. The court properly admitted
them in evidence as against the objection then made.
As to the verdict and judgment in the insurance cases,
the objection simply went to their authenticity and
they were covered by the stipulation between the par-
ties which permitted any matter therein to be read

203 Sup—22

subject to relevancy and competency, and as the plaintiff read the judgment and verdict from the bill of exceptions, the objection to their authenticity was not well taken. Whether they were competent for the purpose of showing a motive on the part of the defendants for assisting in the prosecution of the plaintiff for arson is not now strictly before us, but as this judgment must be reversed, we think the petition, answers and replies in the several cases on the policies of insurance were competent to show the motive defendants had in the prosecution. We think it was perfectly competent to read the various policies themselves in evidence as tending to show the interest which the several defendants had in commencing or assisting in the continuance of the prosecution of plaintiff for arson, but the verdict and judgment were not competent. When the policies were shown and the contest over them, the jury were advised of the relation of the parties. They had nothing to do with the result of those trials, or their details.

IV. The defendants next complain of the action of the court in permitting the plaintiff to detail on the stand the testimony of Miss Blanche Williams given on the trial of the case of H. Carp against The Queen Insurance Company. When the plaintiff was asked to state what Miss Williams had testified to on the trial of that case the defendants objected for the reason that it was hearsay and not the best evidence, which objection the court overruled and the defendants excepted. The plaintiff thereupon proceeded to testify that Miss Blanche Williams, on the trial of that case, testified that she lived next door to the plaintiff's residence in Aurora, and while the fire bell was ringing the night of the fire, she saw plaintiff going through his front gate to the fire after the bell rang. This testimony was offered by the plaintiff on the theory that the defendants could, by consulting plaintiff's next

door neighbors, have learned that he left his .house after the fire bell rung, which evidence would have contradicted the statements of the witnesses who had informed the prosecuting attorney and Musgrove, who was looking up the evidence as to the plaintiff's being present at the building immediately before the fire bell rang,.that he was seen standing in the shadow of the building near by after the alarm had been given. This testimony of Miss Williams was given in the civil case on the Queen Insurance policy at the November term, 1902, and the information upon which plaintiff was prosecuted for arson was filed on the 31st day of May, 1902.

In Stubbs v. Mulholland, 168 Mo. 1. c. 76, it was said by the court: "It has frequently been ruled in this State, that a defendant will be held responsible, not only for what facts he knew when he instituted the prosecution, but for all other facts pertinent to such prosecution, which he could by due diligence have ascertained prior to putting the machinery of criminal law in motion. [Hill v. Palm, 38 Mo. 13; Sappington v. Watson, 50 Mo. 83; Sharpe v. Johnston, 59 Mo. 577; Ibid v. Ibid, 76 Mo. 666.]" The plaintiff invokes this doctrine in support of the ruling of the court admitting this evidence as to what Miss Williams testified in November after the plaintiff had been tried in July on the charge of arson. Learned counsel for the plaintiff says that had defendants consulted plaintiff's next door neighbors, they would have learned that he left his house after the fire bell. rang that night. To hold that a reasonable diligence would have required the defendants or the prosecuting attorney to have ascertained the fact that Miss Williams saw the plaintiff leave his residence after mid-night on the night of the fire and after the fire bell had sounded, when the various witnesses for the State had informed the prosecuting attorney and Musgrove, who were looking up

the evidence, that they saw plaintiff in the immediate vicinity of the burning building immediately before the alarm was given and while the fire bells were ringing, and in the absence of any evidence that she had ever disclosed this fact to any person before the information was filed or the criminal cause was tried at the July term, would in our opinion impose not a due or reasonable diligence, but would hold the defendants responsible for not having discovered evidence which might *possibly* only have been ascertained. If due diligence required the defendants to ascertain this fact before beginning the prosecution, due diligence certainly would have required the plaintiff, who was charged with the felony, to have ascertained it for his defense to that charge, and he admits that the evidence of Miss Williams was not known to him when he was tried in July for arson, and that her evidence was first used in November, three months after that trial. Upon a full consideration of the facts in this case, we are constrained to hold that this evidence as to what Miss Williams testified to for the first time in November, 1902, was not admissible in chief under the rule announced in Stubbs v. Mulholland, supra.

V. As to the objection urged that the court improperly permitted the plaintiff after examining a copy of the evidence given by Mr. White on the trial of the criminal prosecution, to state that was Mr. White's testimony at that time, it is sufficient to state that in that connection Mr. White's testimony was not read to the jury. It was perfectly competent for plaintiff to state his recollection of what Mr. White testified to on that occasion as he was present on trial at the time and heard the evidence of Mr. White. The ruling in Traber v. Hicks, 131 Mo. 180, is not applicable here, because, in that case, the witness was attempting to testify from written memorandum made by another one; he had no personal knowledge and had not heard

the testimony himself. Upon the objection being made, the court ruled that plaintiff could testify to anything that he knew and remembered that Mr. White swore to. It is obvious from an examination of the record that the plaintiff had only read three or four questions and answers of Mr. White in regard to Musgrove's affidavit, when the objection was made, and thereupon the plaintiff called Mr. White himself to the stand, and the further reading from the transcript of his evidence in the criminal case was dispensed with and Mr. White not only did not deny any thing that the plaintiff stated as to his evidence, but testified in full as to his connection with the cases. We think there is no reversible error on this point.

VI. Again, it is insisted that the testimony of Lafayette Harper as to Musgrove's efforts to get the witness to get information from his daughter for the prosecution of plaintiff, was incompetent, because the evidence had developed that the prosecution was not based upon the affidavit of Musgrove, and if it had been he was not the agent nor in any way connected with any of the defendants. It is true Musgrove denies that he was paid anything by the defendants or was employed by them, but a similar contention was made by the defendants in Stubbs v. Mulholland, 168 Mo. l. c. 80, but Judge SHERWOOD in that case, speaking of the evidence of the witness Kinney, said: "It is true Kinney stated he was not employed by Mulholland, that he volunteered his services; but Mulholland accepted those services, accepted his advice and fully acted on this advice, and having done so, Mulholland is estopped to deny that Kinney was his agent." And so we may say here, that while Musgrove disclaimed any agency for the defendants, it is nevertheless true that he reported the evidence which he gathered to Mr. White and the prosecuting attorney and they, in a large measure, acted upon that advice, and there was

much evidence tending to show that Mr. White was acting as attorney for these defendants in the prosecution of the plaintiff, and defendants are estopped from denying that Musgrove was their agent in looking up this testimony.

The evidence as to the capitalization of the several defendants was competent evidence to show their wealth, which in a case like this, is admissible.

The letter from the Underwriters' Protective Association, to Mr. T. H. Loy, written in April, 1902, some two months and a half after the fire, we think should have been excluded. There is no evidence connecting the defendants or either of them with this association; it was clearly incompetent.

The next assignment of error is based upon the admission in evidence of the testimony of Misses Blanche Williams and Susie Harper. Miss Harper was a clerk in the store of H. Carp (which was destroyed by the fire), and had been for four years previous to that time. She had assisted in making the invoice just prior to the fire; she had had fifteen years experience in clerking and had worked for Dr. Harding with the stock of goods sold by him to Carp, and which constituted a part of the stock destroyed by fire. She testified that in her judgment the stock was worth as much as ten or twelve thousand dollars. This evidence was clearly competent, and moreover she had been a witness on the criminal trial, and due diligence in endeavoring to ascertain the value of the goods burned and the amount of the invoice, would at once suggest the propriety of the defendants and the prosecuting attorney inquiring of her as to these obviously relevant matters in the investigation of plaintiff's guilt or innocence in connection with the fire.

As to the testimony of Miss Williams, we have already ruled that it was incompetent for the plaintiff in the first instance to offer that because in ascertain-

ing the existence of probable cause upon which the defendants and the prosecuting attorney would have been justified in commencing the criminal prosecution, the defendants could not have been charged with a want of due diligence in not having ascertained it under all the facts and circumstances of the case. But it is now presented in a different aspect. It seems to be the generally accepted doctrine in this country that a defendant in a case of malicious prosecution may show the guilt of the plaintiff by any evidence in his power, even though discovered after the prosecution began or after it ended. The law does not give this action to a guilty man. As said by the Supreme Court of Mississippi, in Threefoot v. Nuckols, 68 Miss. 1. c. 123, ''Surely no reason can be assigned, nor any respectable authority produced, to justify the shocking proposition that the guilt of the plaintiff in a suit for malicious prosecution may not be shown in any manner or by any proofs, no matter where or when or how acquired. Reason and conscience revolt at the bare thought of a proven criminal recovering damages against the prosecutor.'' [See, also, Bell v. Pearcy, 27 N. C. 84; Newton v. Weaver, 13 R. I. 617; Parkhurst v. Masteller, 57 Iowa 478; Whitehurst v. Ward, 12 Ala. 264.] Acting upon this established principle of law, the defendants asked and the court instructed the jury that if they believed that the plaintiff caused the fire which destroyed or injured the property described in the criminal action against him, then their verdict must be for the defendants, no matter who commenced or was connected with the prosecution of that action, nor what their reasons were for commencing or prosecuting it. Thus the defendants tendered to the jury by their evidence and this instruction, the actual guilt of the plaintiff and not a mere question of probable cause, and the question now arises, was it competent for the plaintiff in rebuttal to disprove the evidence offered by the defendants

for that purpose, by showing that the witnesses for the defendants were either mistaken or had falsely sworn to his presence at the burning building at the times and places testified by them, by evidence that showed that he was at his home and did not start to the fire until after the fire alarms were sounded that night. In Bigelow v. Sickles, 80 Wis. l. c. 101, the court, in discussing the admissibility of this character of evidence, said: "It is proper for the defendant to introduce evidence tending to show that the plaintiff was guilty of the charge, both in proof of probable cause and in mitigation of damages, and without proof that he was informed of the testimony before he made the charge. [Bason v. Towne, 4 Cush. 217; Bell v. Pearcy, 5 Ired. Law (27 N. C.) 83.] The guilt of the plaintiff being a proper issue for the defendant, there appears no good reason why the plaintiff may not rebut such evidence given or anticipated, and show that she was innocent of the charge; and if the defendant may do this without showing any previous knowledge of the testimony, why may not the plaintiff?" While it is true that in an action for malicious prosecution, the guilt or innocence of the defendant is not the issue that is tendered by the plaintiff, but the question is whether the defendants acted maliciously and without probable cause in instituting the proceedings, which resulted in his acquittal, yet when the defendants tender the issue of the actual guilt of the plaintiff which, as we have seen, is a perfect defense without regard to either malice or probable cause, can it be true that a plaintiff is powerless to rebut this issue thus tendered by the defendants by their evidence and by the court in its instructions? We agree with the Supreme Court of Wisconsin that we can see no good reason for denying the plaintiff this right; especially is this true when the evidence, as in this case of Miss Williams, is directed to the immediate time and place and facts covered by that of the defend-

ants. And so although this evidence was not in our opinion competent in chief for the plaintiff on the question of probable cause, because due diligence under the circumstances would not have disclosed its existence, yet when the defendants and the court tender the issue of plaintiff's guilt, we think it was perfectly competent in rebuttal to disprove the guilt of the plaintiff. In Kennedy v. Holladay, 25 Mo. App. l. c. 513, it was said by the St. Louis Court of Appeals: "There was no error in permitting the plaintiff to testify that he 'did not appropriate eleven hundred dollars, or any other sum, of Holladay's money.' The criminal indictment charged that he did this. Although, as justly held in Brennan v. Tracy, 2 Mo. App. 540, and other Missouri cases, and as the court charged the jury in this case, the issue in such an action as this, is not whether the plaintiff was guilty of the crime charged in the criminal indictment, but whether the defendant had probable cause to believe him so, nevertheless, the fact whether he was guilty or innocent is material, as bearing upon the question of probable cause, and no ruling with which we are acquainted makes testimony as to such fact irrelevant."

VII. It is also complained that the court erred in permitting the plaintiff to read the deposition of Musgrove taken by the plaintiff in the case of Carp v. The Hamburg Bremen Insurance Company, for the purpose of contradicting the evidence which he gave in this case as a witness for the defendants. Plaintiff had not offered Musgrove as a witness in this case and vouched for his credibility, and it was perfectly competent to show by his deposition given on a previous trial, that he had made statements to the contrary of those he had made in this case. Dunn v. Dunnaker, 87 Mo. 597, is no authority for the position taken by defendants, that plaintiff was estopped from offering this deposition to contradict the witness Musgrove.

VIII.  It is also relied on as error that the court permitted the plaintiff to show his good reputation for business integrity and honesty in the community in which he resided prior to the criminal charge made against him and especially because the court refused to permit defendants to show his bad reputation.  That it was competent to prove the good reputation of the plaintiff prior to this criminal charge, is abundantly established by the decision of this court in Stubbs v. Mulholland, 168 Mo. l. c. 77, 78, 79 and 80.  As to the charge that the court rejected evidence of plaintiff's bad reputation, all that appears on that subject is found in the cross-examination of Mr. McPherson, the prosecuting attorney, by counsel for the defendants.  He was asked by counsel for the defendants, "Did you, when you filed the affidavit, have any information that this Sam Carp had burned out at Greenwood, Arkansas, under the name of Turk, or some similar name?"  He answered: "I cannot say at the time of the institution of the suit; that information was in a letter sent here from Arkansas.  I derived my information about that from a letter and perhaps a statement that Judge Underwood made to me; of course, I do not know whether it was before or after this prosecution was instituted or not, but sometime, in addition to this letter, Judge Underwood, an insurance agent, I do not know what company he represented, told me, as I understood it, that he had written some insurance policies that the companies refused and ordered cancelled because of the fire he had had sometime in Arkansas, I think under the name of Turk.  I am under the impression this was all after the institution of the suit and before the trial of the criminal case.  That evidence was not at the trial."  This evidence on motion of the plaintiff was stricken out.  It will be observed that the so-called evidence was pure hearsay and did not go to the general reputation of the plaintiff at any particular

point in Arkansas, and the prosecuting attorney's informant did not pretend to know any thing about the reputation of the plaintiff in that community; moreover, this information, whatever it was, was not given to the prosecuting attorney prior to the commencement of the criminal prosecution and hence could not have furnished any ground of probable cause for commencing the prosecution. [Hart v. McLaughlin, 51 App. Div. (N. Y.) 411.]

IX. The exclusion of the evidence of T. H. Loy as to the general reputation of the witness James Wilson, is assigned as error. On this point the record discloses the following: T. H. Loy recalled was asked, "Are you acquainted with Jim Wilson?" A. "Yes, I know Jim Wilson, commonly called 'Windy Jim,' am also acquainted with his reputation." Q. "Are you acquainted with his general reputation for truth and veracity in the community where he lives?" A. "Yes, sir, somewhat." Q. "Is it good or bad?" A. "It is not the best." Cross-examination: "I do not remember who I ever heard say it was not good; it is just what I know about him myself, I have had a lot of business with him." Q. "And you base your answer on what he does." A. "Well, partly, yes, sir." Counsel for the defendants: "We move to strike the answer out." By the court: "Let it be stricken from the jury." Counsel for the defendants: "We except." Taken as a whole, we think the court committed no error in striking out this evidence. It is quite apparent, we think, that the witness was basing his opinion of Wilson's reputation simply upon his own transactions with him.

X. As to the next assignment, to-wit, that the court erred in refusing to sustain the motion of defendants to strike out the affidavit, information and other pleadings and record, we have already passed upon the ad-

missibility of those papers and nothing further need be said in regard thereto.

XI.  Having considered the various objections to the testimony, we are brought to the real controversy in this case, and that is that the court should have given a peremptory instruction on behalf of the defendants, taking the case from the jury, on the ground that this prosecution was not instigated or carried on by the defendants.  This claim is largely predicated upon the testimony of Mr. McPherson, the prosecuting attorney, who filed the information and prosecuted the criminal case.  He testified that he was not employed by the insurance companies to file the affidavit and was not requested by the insurance companies, or their agents, to do so, and had not received any letters requesting him to do so; he had no communication except with Musgrove, and that he filed the affidavit and information honestly believing from the evidence furnished him that the plaintiff started the fire, and he thought that the evidence was sufficient to convict the plaintiff at that time.  He stated that he advised Mr. Musgrove at the time Musgrove made the affidavit against the plaintiff, that he believed that the testimony that Musgrove was giving him and what he had learned from other parties, was sufficient to convict the plaintiff.  It is upon this testimony then that it is insisted there was no case to go to the jury, which tended to show that these defendants instigated or assisted in the carrying on of the prosecution against the plaintiff.  No one will question upon reading this record, the absolute sincerity of the prosecuting attorney, but this insistence of the defendants entirely ignores the fact that Mr. McPherson received his impressions and formed his conclusion as to the guilt of the plaintiff from the statements made to him by Musgrove, and other witnesses whom Musgrove secured to testify.  He says, ''I assumed that the witnesses were telling the

truth." The evidence in the case discloses that before
Mr. McPherson filed this information as prosecuting
attorney, Musgrove had consulted Mr. White and be-
sought his assistance in the prosecution of the plain-
tiff. The affidavit of Musgrove was drawn in Mr.
White's office by Mr. White and himself, and was
signed by Musgrove at the request of Mr. White.
Without specifying all the details of the evidence, it
plainly appears that Mr. White assisted in the prosecu-
ting of this case from its commencement until the prose-
cution was dismissed by the prosecuting attorney and
that he was paid for his services in this criminal case
by the accredited agents and attorneys of the defend-
ants. While it is true Musgrove denies that he was
acting as the agent of these defendants in seeking evi-
dence and urging this prosecution against the plaintiff,
it is unquestionably true that the defendants accepted
those services and acted upon his advice and employed
Mr. White to prosecute the plaintiff on the charge of
arson and, as said in Stubbs v. Mulholland, supra, the
defendants are now estopped from denying that he
was their agent. It requires too much credulity to be-
lieve that Musgrove was getting and devoting his time
to the procurement of testimony and the prosecution of
this case without expectation of reward from some in-
terested person, and so far as the testimony in this case
discloses, the only parties interested in the prosecution
of the plaintiff were the defendants, who were seeking
to avoid the payment of their policies on the stock of
burned goods. But more than this, the evidence tends
to show that within a very few days after the fire, and
before Musgrove became so active in his search for
incriminating testimony against the plaintiff, Mr. Mil-
ton Welch, an adjuster for all of these companies ex-
cept the Hanover company, was in the city of Aurora
and sent for the plaintiff and his brother, the owner
of the stock of goods, and assumed the position of a

representative of these defendants as adjuster and examined the plaintiff and his brother as to the loss and amount of goods, their indebtedness, etc., and then in the presence of the witness Wilson, in the office of the local agent, expressed the opinion that Carp had burned his store, and that he would send the marshal down from Kansas City to arrest him, and that he ought to be in the penitentiary. Mr. Welch afterwards appeared in connection with these losses for all the companies except the Hanover, and signed the agreement for arbitration, and afterwards promised to pay Mr. White fifty dollars for his services in the criminal prosecution as a personal fee. While it is true that the prosecuting attorney assumed the responsibility of his prosecution, it is also certain that he did not start it until Musgrove had signed and sworn to the affidavit prepared by Mr. White in Mr. White's office in the presence of the prosecuting attorney, and did not do so until after Mr. Musgrove had given him all the information and cited him to witnesses who would testify to incriminating circumstances. We think without further elaboration that there was ample evidence tending to show that the prosecuting attorney was moved to bring this prosecution upon representations and the evidence furnished him by Musgrove, and that the defendants availed themselves of that evidence and assisted in the maintaining and carrying on this prosecution through their counsel Mr. White from the very inception of the case until its dismissal. The cases of White v. Shradski, 36 Mo. App. 635; Babcock v. Merchants' Exchange, 159 Mo. 381; Barrett v. Chouteau, 94 Mo. 21, are so unlike in the facts upon which the informations are predicated that they in no manner cover the law of this case. Neither do we think the cases of Diel v. Railroad, 37 Mo. App. 454, or the very recent case of Milton v. Railroad, 193 Mo. 58, are applicable, because in those cases the agents of the railway company

were not acting within the scope of their authority in procuring the arrest of the plaintiffs in those cases, nor were the companies themselves engaged in the prosecution, whereas in this case the companies avail themselves of all the acts of the self-constituted agents, if such they were, and employed counsel to prosecute and carry on the case against the plaintiff. We are clearly of the opinion that the circuit court committed no error in refusing to sustain a demurrer to the evidence on the ground that the defendants were not active participants in the prosecution of the plaintiff for arson. It may be added in this connection that the rule invoked that where the defendants truthfully disclose all the facts within their knowledge to competent counsel and are advised that there is probable cause for a prosecution, they are not liable, would not have justified the court in this case in taking the case from the jury, because, in this case, it was for the jury to determine whether Musgrove disclosed all the facts to Mr. White and the prosecuting attorney which were within his knowledge, or which were easily ascertainable by him touching the plaintiff's connection with the fire. [Stubbs v. Mulholland, 168 Mo. 47; Sharpe v. Johnston, 76 Mo. 669.]

XII. But defendants make another contention, to-wit: that the evidence connecting the plaintiff with the burning of the store was sufficient to take the case from the jury on the ground that it clearly established probable cause for the prosecution. Probable cause is a mixed question of law and fact. When the facts are undisputed, it is the duty of the court to declare their legal effect; when they are disputed, it is for the jury to determine the question under proper instructions from the court. [Hill v. Palm, 38 Mo. 13, and authorities there cited.] If the testimony offered by the defendants through Musgrove, Mrs. O. Quinn, Mrs. Horn and others stood confessed and uncontradicted there would

be much force in the contention of the defendants, but the plaintiff insists that their testimony shows facts testified to by them and by other witnesses, also, tending to show that their testimony was not reliable, and was impeached by witness for plaintiff. Under such circumstances, we think the rule is too well settled that in such a case it is a question for the jury to determine under proper instructions from the court, as the appellate courts of this State have often decided. [Sharpe v. Johnston, 59 Mo. 557, and cases cited.] Neither the circuit court nor this court would be justified in assuming the absolute truth of the testimony of Musgrove and the other witnesses for the defendants, and upon that assumption hold that this was a question of law and not of fact. [Stubbs v. Mulholland, 168 Mo. 47.] And the same can be said as to the question of malice.

XIII. This brings us to the instructions of the court. All of those asked by the plaintiff and given by the court in his behalf are challenged. The first instruction given for the plaintiff is as follows:

"The court instructs the jury, that notwithstanding you may believe from the evidence that there was sufficient evidence produced at the trial of the criminal case against plaintiff to constitute probable cause as defined to you in the other instructions, yet, if you further believe from the evidence that any material part of the evidence introduced against the plaintiff in said criminal case was false, and was known to be false, by the defendants or either of them or their agents or servants, and that said false testimony was procured or connived in by the defendants or either of them or their agents, then the jury would be warranted against such defendant or defendants, in finding that there was no probable cause for said prosecution, and that the same was malicious."

This instruction does not assume that there was false testimony given against the plaintiff, but left it

to the jury to say under the contradictions of the evidence whether it was so or not. Nor is it open to the objection that there was no evidence to connect the defendants with such testimony, and it only made the defendants liable therefor if the defendants procured or connived in the same. Nor did it hold the defendants liable for an unauthorized act of their agents. We think the instruction was well enough.

The second instruction for the plaintiff was as follows: "The court instructs the jury' that the defendants' connection with the prosecution does not have to be proven by direct and positive evidence, but may be established by facts and circumstances in evidence in the case from which such connection with said prosecution may be reasonably inferred." This instruction is clearly not erroneous. And a like instruction was given at the instance of the defendants pointing out for them from their view of the prosecution what acts of the different persons connected with them would not justify a finding that the prosecution was instituted or maintained by them.

The third instruction is as follows:

"The court instructs the jury, that if you believe from the evidence in the case that the defendants herein or either of them by their servants or agents willfully, maliciously and without probable cause did aid, advise or procure an information to be filed in the circuit court of Lawrence county, Missouri, on or about the — day of May, 1902, or did willfully, maliciously and without probable cause, aid, abet and advise the continuance of said prosecution after the filing of said information by their servants or agents for the crime of arson in the third degree, and on said information a State warrant was issued, and the plaintiff was arrested upon said warrant, and thereby required and compelled to give bond for his appearance to answer said alleged offense, and that plaintiff was in accord-

ance with the conditions of said bond compelled to appear in said court, and that he did appear and was discharged, then the jury should find the issue for the plaintiff.''

The objection to this instruction is that it permitted the jury to hold the defendants liable for the acts of their agents regardless of their authority from the defendants. This objection is obviously without merit. It is also insisted that this instruction was not justified because it holds the defendants liable if they aided, abetted and advised the continuance of said prosecution, whereas it is said the petition does not count upon a continuance or maintenance of the prosecution. The petition alleges ''that during all the said times above referred to,'' that is, from the commencement of the prosecution until its end, ''and each and every act done in the prosecution of the plaintiff for said crime, defendants acted with malice towards plaintiff and actively participated in the prosecution of plaintiff for said false charge from its beginning until plaintiff was fully discharged.'' This allegation we think sufficiently avers a malicious continuance of the prosecution and fully justified the instruction. Besides, the defendants asked and obtained an instruction which told the jury ''that to entitle plaintiff to recover in this case he must prove by a preponderance of the evidence that the defendants made or caused to be made or lodged or *maintained* the complaint or affidavit upon which the plaintiff was arrested.'' And their objection to this instruction to the words ''advise the continuance of said prosecution,'' is without merit when taken in connection with the whole clause, to-wit, ''aided, abetted and advised.'' This instruction was not erroneous.

The fourth instruction is as follows:

''The jury are instructed that there are two kinds of malice, malice in fact and malice in law; the former,

in common acceptation means ill will against a person; the latter is a wrongful act done against a person intentionally. If therefore the jury believe from the evidence that the defendants or either of them by their servants or agents, were moved by ill will against the plaintiff, or that the prosecution of plaintiff was wrongfully and intentionally caused by them, or was wrongfully and intentionally maintained by them after said prosecution had begun, or either of them, then the jury should as against such defendant or defendants find that such was malicious." The same objection is made to this as was made to the last instruction, to-wit, that it permitted a recovery if the prosecution was wrongfully and intentionally maintained by the defendants after it had begun. As already said, we think the petition was broad enough, as was the evidence, to support this instruction.

The fifth instruction is in the following words:

"The court instructs the jury, that by probable cause is meant reasonable ground for suspicion, supported by circumstances sufficiently strong within themselves to warrant a cautious man in a belief that the accused was guilty of the offense charged, and if the jury believe from the evidence that the defendants or their agents were actuated with hostile and vindictive motives against the plaintiff, and that the said prosecution was without probable cause as herein defined, then they should find a verdict for the plaintiff."

The definition of probable cause in this instruction is in the exact language of an instruction given for the defendants at their request. The objection urged to the instruction that it does not state that the defendants were connected with the prosecution, is, we think, untenable, because this instruction, of course, must be read in connection with all the other instructions. Its main purpose was to define to the jury what constituted probable cause.

The sixth instruction told the jury, "That the defendants cannot shield themselves under the advice of counsel, unless the jury find and believe from the evidence that the defendants communicated to such counsel all the facts bearing upon the guilt or innocence of the accused in the criminal case, which they knew or by reasonable diligence could have ascertained, and you are therefore instructed that if you believe from the evidence that the defendants or their agents intentionally concealed or falsely represented or neglected to ascertain and advise said counsel of all the facts which they knew or by the exercise of reasonable diligence could have ascertained bearing on the innocence or guilt of the accused in said criminal case, then the advice of counsel is of no avail as a defense in this case." This instruction is in harmony with the law declared in Stubbs v. Mulholland, 168 Mo. 47.

The seventh instruction is in this language: "If the jury find for the plaintiff he will be entitled to recover such actual damages as the jury may believe from the evidence he suffered by reason of the prosecution; and in considering his actual damages, you may take into consideration the reasonable value of the time necessarily employed by him in preparing his defense and the reasonable value of attorneys' fees, if any, contracted by him in his defense, and the mental anxiety, if any, suffered by him in consequence of such prosecution, as well as the injury to his reputation and business, as you may believe from the evidence resulted from said prosecution, not exceeding, however, the sum of ten thousand dollars, the amount claimed on that account in the petition; and you may add to such an amount so found as exemplary damages considering the defendants' financial ability to pay, as you believe from the circumstances and the facts detailed in evidence would serve as a proper punishment to the defendants or either of them, not exceeding however as

such punitive damages the sum of fifteen thousand dollars, the amount claimed in plaintiff's petition.''

It is first objected that this instruction improperly submitted to the jury the question of punitive damages, when there was nothing upon which to base the same. With this we cannot agree, because, if the plaintiff's evidence was true and believed by the jury, there was evidence tending to show actual malice. We have already held that the petition and the evidence authorized damages for the injury of plaintiff's business. [State to use v. McHale, 16 Mo. App. 478; State to use v. Fargo, 151 Mo. 290.]

Again, the refusal of the second instruction asked by the defendants is assigned as error. That instruction is in these words: ''The court instructs you to entitle plaintiff to recover in this case, he must prove by a preponderance of the evidence that the defendants made, or caused to be made or lodged, or maintained, the complaint or affidavit upon which the plaintiff was arrested, and that they did so maliciously and without probable cause, and if you find and believe from the evidence that the complaint was made and maintained by the prosecuting attorney of Lawrence county, upon his own motion, and without any request or procurement on the part of the defendants, then your verdict should be for the defendants.''

This identical instruction was prayed and refused in White v. Shradski, 36 Mo. App. 635, and the Court of Appeals held that in the light of the issues in that case and the testimony adduced at the trial, the refusal of the instruction was harmful and constituted reversible error. It is well settled in this State that courts should only instruct upon the state of case which the evidence justifies. We think that the evidence in this case does not authorize this instruction. We have already expressed our views as to this being a prosecution by the prosecuting attorney upon his own motion

and at his own instance. We think that his own evidence and that of Mr. White and Musgrove and the requirement of an affidavit by Musgrove before the prosecuting attorney would begin this prosecution, all demonstrates beyond a question that this was not a case brought by the prosecuting attorney of his own motion, but he was induced to bring it by the representations of Musgrove as to what the evidence would be, and upon talking with the witnesses to whom Musgrove referred him, he very wisely took the precaution of having Musgrove make an affidavit as to the guilt of the plaintiff herein, and filed that affidavit with his information.

The facts of this case are wholly unlike those of White v. Shradski, which we think was correctly ruled. Moreover, this is a civil case and the circuit court is not bound of its own motion to correct instructions asked, but if the instruction is erroneous, the court is not bound to give it. This instruction is otherwise faulty in that it permitted a finding for the defendants if they did not begin the prosecution. Whereas the court in their instructions properly instructed the jury that if they maintained a continuance of the prosecution and aided and abetted it until its end with malice and without probable cause, they were liable. We think the court committed no error in refusing this instruction upon the uncontradicted facts in evidence.

The court also refused the following instruction: "The court instructs you that the question for you to decide is not whether the plaintiff was guilty of the crime of arson, for which he was prosecuted, but whether the defendants, or those who started said prosecution, had reasonable grounds to believe him guilty of such crime, and in this connection you are instructed that if the evidence of such crime, on the trial of the criminal charge, was such as to cause the jury trying the plaintiff to disagree and to fail to re-

turn a verdict acquitting the plaintiff of such charge, then you will be authorized in finding that such prosecution was with probable cause, and your verdict in such case should be for the defendants.''

While the court refused this instruction in these words, it practically gave the same in another instruction for the defendants, changing it, however, so as to read ''that a failure to return a verdict acquitting the plaintiff was a circumstance from which they could infer such prosecution was with probable cause.'' As authority for this instruction, we are cited by the learned counsel for the defendants to Johnson v. Miller, 63 Iowa l. c. 538, 539 and 540, in which the Supreme Court of Iowa held that evidence that the jury disagreed on the first trial was admissible to show probable cause although on a subsequent trial the plaintiff was acquitted, the court holding that it was prima-facie evidence of probable cause. Upon the examination of the authorities upon which that decision is based, we find ourselves unable to concur in that view of the law. In our opinion the disagreement of the jury established no fact and is a wholly immaterial matter on the trial of a cause for malicious prosecution. To admit evidence of this character and to instruct the jury that the disagreement of a jury in the trial of a criminal cause would be evidence of probable cause, would be to open up an entirely collateral issue and lead the jury away from an investigation of the issue tendered by the pleadings. We have been unable to find any other case from any court of last resort in this country, which justifies this instruction. The court committed no error in refusing this instruction, but did err in giving the one to the same practical effect, which it did give. But of this, of course, defendants are in no position to complain, as it was self-invited error. The evidence upon which this instruction was based should have been ex-

cluded when offered by the defendants and the plaintiff.

The court also refused an instruction asked by the defendants that the affidavit made and signed by Musgrove and filed in the office of the clerk of the circuit court of Lawrence county with the information in the criminal case, did not constitute the commencement of a criminal proceeding, but such proceeding was commenced solely and alone by the affidavit of the prosecuting attorney, which was filed in the office of the clerk of the circuit court. This instruction was properly refused for two reasons, first, the affidavit of the prosecuting attorney was not the commencement of the criminal proceeding, but the information filed by him was the legal basis thereof, and second, the instruction was properly refused because, although the information was the institution of the prosecution, the gravamen of this prosecution is that it was induced by the affidavit and statements of the defendants through Musgrove and the advice of Mr. White and maintained by the defendants throughout until that prosecution ceased. The instruction was out of place and would have served no good purpose in enlightening the jury as to their duty in the consideration of the issues they were called upon to try.

XIV. It is also insisted that the damages allowed by the jury are excessive. The verdict is a large one, but in a case of this character the amount of damages is largely a question for the jury. The law concedes a wide latitude of discretion to the jury in actions of this class, and their verdict should not be interfered with unless the appellate court can say it was the result of prejudice, passion or malice. Numerous considerations must necessarily enter into the question of what is just compensation in such a case, but no definite rule can be laid down to any of them. The law has provided that the jury shall decide this question. Dis-

grace is a relative term; what is such to one man is not necessarily so to another, and while it applies to each, its effect or measure is great or small as other conditions exist. Mental anxiety and pain caused thereby and humiliation and danger from a prosecution for a grave criminal offense, are all conditions for the jury, as well as the jeopardy in which the liberty of the plaintiff was placed by such prosecution. We are unable to say, after a careful consideration of all this evidence, that the verdict of the jury was such as to evince passion, prejudice or malice towards the defendants by the jury.

XV. While as we have already said in respect to the elements that go to make up the damages in a case of malicious prosecution, mental anguish, pain and injury to the feelings may be considered by the jury, we are of the opinion that the testimony of Mr. Jonas as to the evidence of mental worry, which he noticed in the plaintiff, that he went around hanging his head and acting as if he was in deep trouble and not in his right mind, was not the proper way to prove the damages from mental anguish, and the disgrace suffered by the plaintiff. Evidence of this character would open the door for all kinds of self-serving testimony. We think this evidence should have been excluded.

XVI. In the reply brief by the counsel for the defendants, the objection is renewed to the pleadings and proceedings in the civil cases of H. Carp against these appellants on the ground that these actions were subsequent to the criminal prosecution and, therefore, could not have entered into the question of probable cause or malice. And our attention is specifically called to the case of Vansickle v. Brown, 68 Mo. 632. It has often been ruled in actions of this character that where the evidence shows that the purpose of encouraging or maintaining criminal prosecutions is the en-

forcement of a civil liability, it is evidence of want of probable cause. [Eagleton v. Kabrich, 66 Mo. App. l. c. 237; Clark v. Thompson, 160 Mo. 461; Stubbs v. Mulholland, 168 Mo. 47; Schofield v. Ferrers, 47 Pa. St. 194.] The same principle must apply where the purpose is to avoid civil liability.

It is also insisted that the court erred in permitting counsel for plaintiff in his argument to state matters not in evidence, to-wit, that Musgrove had kept the witnesses for defendant at Mt. Vernon during the criminal trial, and to refer to one of the witnesses for plaintiff as a prominent member of the World's Fair Commission and to refer to counsel for defendants as the "oily-tongued gentleman from Chicago."

As all of these matters can readily be avoided on another trial, it is not necessary to determine whether either or all of them constitute reversible error. It is to be hoped that on the next trial counsel will refrain from all matters not fairly within the record and if they do not that the circuit court will see that they do.

For the errors noted in the admission of evidence the judgment of the circuit court must be and is reversed, in order that the jury may reach a verdict uninfluenced by such incompetent and extraneous matter. While we have ruled that the counsel could identify certain files of the court, we desire to add that all such questions should be avoided by calling the clerk of the court, the lawful custodian of such files and records, and let him identify the records and files of his court.

The judgment is reversed and the cause remanded for a new trial in accordance with the views herein expressed.

*Fox, P. J.,* and *Burgess, J.,* concur.